Docket No. 97239–Agenda 14–September 2004.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. IVORY LEE, Appellant.

Opinion filed December 2, 2004.

JUSTICE KILBRIDE delivered the opinion of the court:

Defendant, Ivory Lee, was convicted of second degree murder (720 ILCS 5/9–2 (West 1998)) and two counts of aggravated battery with a firearm (720 ILCS 5/12–4.2 (West 1998)) involving two victims, Wile and Willis Trotter. The aggravated battery with a firearm count for the shooting of Willis Trotter is not at issue here. Regarding Wile Trotter, defendant was sentenced to 20 years’ imprisonment for the second degree murder conviction, a Class 1 felony, and 15 years’ imprisonment for the aggravated battery with a firearm conviction at issue here, a Class X felony, thus receiving a greater sentence on the lower class felony. The appellate court affirmed in part and vacated the aggravated battery with a firearm conviction on one-act, one-crime grounds. 
People v. Lee
, 311 Ill. App. 3d 363 (2000).

We denied defendant’s first petition for leave to appeal but, pursuant to our supervisory authority, we remanded the cause for further consideration in light of 
People v. Crespo
, 203 Ill. 2d 335 (2001). On remand, the appellate court “adhered” to its original opinion, affirming the second degree murder conviction and vacating the aggravated battery with a firearm conviction. 343 Ill. App. 3d 431. We then granted defendant leave to appeal (177 Ill. 2d R. 315(a)), and now affirm in part, reverse in part, and remand.

I. BACKGROUND

Defendant was indicted with (1) three counts of first degree murder of Wile Trotter: (a) intentional murder (720 ILCS 5/9–1(a)(1) (West 1998)), (b) knowing murder (720 ILCS 5/9–1(a)(2) (West 1998)), and (c) felony murder (720 ILCS 5/9–1(a)(3) (West 1998)); (2) one count of aggravated battery with a firearm of Wile Trotter; (3) one count of aggravated battery with a firearm of Willis Trotter; and (4) one count of unlawful use of a weapon by a felon (720 ILCS 5/24–1.1 (West 1998)). The State later dismissed the counts of felony murder and unlawful use of a weapon by a felon.

The evidence elicited at defendant’s jury trial showed the following. On the evening of February 6, 1997, defendant and several of his friends went to a party at Sky Harbor Inn in Springfield. The group took along a handgun for protection, but initially left it in the car. Approximately one hour after the group arrived at the party, twin brothers Wile and Willis Trotter, who were allegedly known for carrying guns, also arrived at the party. Defendant presented evidence that Wile and Willis had previously shot at defendant and his friends, pointed a gun at one or more of them without shooting, and shot at other people. Following the arrival of Wile and Willis, defendant and two of his friends went to their cars to get some drinks. At this time, defendant retrieved the handgun from his friend’s car and put it in his waistband. The three then returned to the party.

Shortly thereafter, defendant’s group decided to leave the party. Once outside, Willis began arguing with one of defendant’s friends. The two yelled at each other and exchanged profanities. According to the statements of defendant and two of his friends, Willis appeared to reach for a gun inside his pocket during the argument. Defendant stated that because he believed Willis was reaching for a gun, he pulled the handgun from his waistband and shot Willis.

Defendant also believed that Wile was reaching for a gun in his coat. Defendant shot Wile three times. Defendant and his group then fled the scene. When police arrived, Wile told them that two of the others in the group had shot him. Police found no weapons at the scene. Shortly thereafter, the police stopped a car and a passenger, later identified as defendant, ran from the car toward some nearby houses. Police searched the remaining members of defendant’s group who were also in the car, but did not find any weapons. The group was taken to the police station for questioning. Defendant was later arrested. He initially claimed that he was inside the Sky Harbor Inn at the time of the shooting. When police told him other witnesses contradicted this claim, he signed a statement where he admitted to shooting Wile and Willis. However, he claimed the shootings were in self-defense.

Defendant was convicted of the second degree murder of Wile Trotter, aggravated battery with a firearm of Wile Trotter, and aggravated battery with a firearm of Willis Trotter. The second degree murder conviction arose as a lesser-mitigated offense of first degree murder. The jury found that defendant believed circumstances existed to justify the use of deadly force, but also found that defendant’s belief was unreasonable. The court sentenced defendant to 20 years’ imprisonment for second degree murder and 15 years’ imprisonment for aggravated battery with a firearm of Wile Trotter, and 18 years’ imprisonment for aggravated battery with a firearm of Willis Trotter. The 20- and 15-year sentences were to run concurrent to each other, but consecutive to the 18-year sentence. Defendant appealed, arguing that: (1) the State failed to prove beyond a reasonable doubt that he did not shoot the Trotters in self-defense; and (2) his convictions for second degree murder and aggravated battery with a firearm of Wile were based on the same physical act.

The appellate court affirmed in part and vacated in part. 
Lee
, 311 Ill. App. 3d 363. We denied defendant’s leave to appeal. In the exercise of our supervisory authority, we vacated the appellate court’s judgment and directed the court to reconsider its decision in light of 
People v. Crespo
, 203 Ill. 2d 335 (2001). Following remand, the appellate court reached the same result. 343 Ill. App. 3d 431. The appellate court rejected defendant’s self-defense argument, concluding that the State proved his belief that the circumstances justified the use of deadly force was unreasonable. 343 Ill. App. 3d at 437.

The appellate court noted that the 
Crespo
 defendant, like defendant here, committed a series of closely related but separate acts when he stabbed one of the victims three times in rapid succession. 343 Ill. App. 3d at 438. Here, defendant shot Wile Trotter three times. As in 
Crespo
, the charging instrument did not apportion the separate acts into separate crimes. 343 Ill. App. 3d at 439. The appellate court recognized that in 
Crespo
 the State could have charged each stab wound as a separate crime, but did not. 343 Ill. App. 3d at 439. Nor did the State argue that theory to the jury. 343 Ill. App. 3d at 439. Similarly, the State did not charge each gunshot in this case as a separate crime. 343 Ill. App. 3d at 439. Defendant’s convictions for second degree murder and aggravated battery with a firearm of Wile were, therefore, based on the same physical act. 343 Ill. App. 3d at 438-39. The appellate court then vacated the aggravated battery conviction, stating that the one-act, one-crime principle should inure to the benefit of the State, not defendant. 343 Ill. App. 3d at 441. Defendant again petitioned for leave to appeal (177 Ill. 2d R. 315), and we granted the petition.

Other relevant facts will be introduced as they become pertinent to our analysis.

II. ANALYSIS

A. Self-Defense

First, we address defendant’s argument of self-defense. Self-defense is an affirmative defense, and once a defendant raises it, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense. 
People v. Jeffries
, 164 Ill. 2d 104, 127 (1995). The elements of self-defense are: (1) that unlawful force was threatened against a person; (2) that the person threatened was not the aggressor; (3) that the danger of harm was imminent; (4) that the use of force was necessary; (5) that the person threatened actually and subjectively believed a danger existed that required the use of the force applied; and (6) the beliefs of the person threatened were objectively reasonable. 720 ILCS 5/7–1 (West 1998); see also 
Jeffries
, 164 Ill. 2d at 127-28. If the State negates any one of these elements, the defendant’s claim of self-defense must fail.
 Jeffries
, 164 Ill. 2d at 127-28.

The parties’ arguments on this point center on the reasonableness of defendant’s belief that the circumstances warranted the use of deadly force. This issue involved credibility determinations made by the jury. It is the function of the jury as the trier of fact to assess the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. 
People v. Tenney
, 205 Ill. 2d 411, 428 (2002). The jury must also resolve conflicts or inconsistencies in the evidence. 
Tenney
, 205 Ill. 2d at 428. The relevant standard of review is whether, after considering the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that defendant did not act in self-defense. 
People v. Young
, 347 Ill. App. 3d 909, 920 (2004).

According to defendant, all of the eyewitnesses, except Willis Trotter, claimed that Willis Trotter had acted as if he had a gun. Defendant also argues that several witnesses testified that both Willis and Wile had been known to carry guns and were involved in various shootings. As the State points out, Willis’ attire of bib overalls and no coat belied defendant’s theory that Willis had reached for a gun, as it would have been difficult to conceal a gun in that attire. Further, while one witness claimed to have seen a black object on Willis’ hip, no witness claimed to have seen a gun. Moreover, given defendant’s escape when the police attempted to arrest him and considering his initial false exculpatory statement to police, we cannot say that the jury’s apparent decision to believe Willis’ version of events was unreasonable. We agree with the appellate court that “[t]he evidence showed that (1) the Trotters did not make threats to anyone on the night of the shootings; (2) no witness observed either of the Trotters with a gun that night; and (3) the police did not recover a gun from either Willis or Wile or from the scene after the shootings.” 343 Ill. App. 3d at 436.

In sum, reviewing the evidence in accord with the standard expressed above, we hold that a rational trier of fact could have found, beyond a reasonable doubt, that defendant’s belief that the circumstances justified the use of deadly force was unreasonable. Therefore, the State proved beyond a reasonable doubt that defendant did not act in self-defense.

B. One-Act, One-Crime

Next, we address whether the second degree murder conviction or the aggravated battery with a firearm conviction must be vacated under the one-act, one-crime doctrine. As acknowledged by the State, defendant is not bound by his waiver of the issue below. See 
People v. Harvey
, 211 Ill. 2d 368, 389 (2004) (one-act, one-crime violation affects the integrity of the judicial process and, therefore, satisfies the plain error rule). Defendant argues that the State has conceded and the appellate court has held that under 
People v. Crespo
, 203 Ill. 2d 335 (2001), the three shots defendant fired at Wile constitute one crime. Therefore, the only remaining issue is what conviction should be vacated. The State agrees.

This court has always held that, under the one-act, one-crime rule, the less serious offense must be vacated. See 
People v. Garcia
, 179 Ill. 2d 55, 71 (1997) (when multiple convictions are obtained for offenses arising from a single act, a sentence should be imposed on the more serious offense, and the conviction on the less serious offense should be vacated); see also 
People v. Cardona
, 158 Ill. 2d 403, 411 (1994). The question then is straightforward: Is second degree murder (720 ILCS 5/9–2 (West 1998)) or aggravated battery with a firearm (720 ILCS 5/12–4.2 (West 1998)) the more serious crime?

In answering this question, we turn to an instructive decision cited by both parties, 
People v. Duszkewycz
, 27 Ill. 2d 257 (1963). In 
Duszkewycz
, the defendant was convicted of rape and incest for the same act. He was sentenced to 5 years’ incarceration for rape and 19 to 20 years’ incarceration for incest. In relevant part, we stated:

“In the present case we are of the opinion that only one sentence should have been imposed, and that sentence should have been for the greater offense. The relative gravity of the two offenses involved in the single act in this case can not depend upon the sentences actually imposed, on the rape charge by the jury and on the charge of incest by the judge. A touchstone more reliable than the subjective reaction of different tribunals to the same facts is required, and we therefore turn to the appraisal made by the General Assembly.” 
Duszkewycz
, 27 Ill. 2d at 261.

We then compared the relative punishments prescribed for the two offenses and determined that rape was classified by the General Assembly as the more serious offense. 
Duszkewycz
, 27 Ill. 2d at 261-62. The punishment authorized by the legislature for rape was a definite prison term of 1 year to life to be imposed by the jury, and the punishment authorized for incest was a 1-year to 20-year indeterminate term to be imposed by the trial court. 
Duszkewycz
, 27 Ill. 2d at 261-62. Consequently, we held that rape was the more serious offense and reversed the defendant’s conviction for incest, even though the defendant received a longer sentence for that conviction. 
Duszkewycz
, 27 Ill. 2d at 262-63.

As with the most familiar means of determining legislative intent, we simply use the plain language of the statutes to determine what crime is more serious. See 
People v. Collins
, 202 Ill. 2d 59, 76 (2002) (where legislative intent can be ascertained from the plain language of the statute itself, that intent must prevail). It is common sense that the legislature would provide greater punishment for crimes it deems more serious. Here, the legislature has classified aggravated battery with a firearm as a Class X felony with a possible sentence of 6 to 30 years. 720 ILCS 5/12–4.2(b) (West 1998); 730 ILCS 5/5–8–1(a)(3) (West 1998). Second degree murder is a Class 1 felony with a possible sentence of 4 to 20 years. 720 ILCS 5/9–2(d) (West 1998); 730 ILCS 5/5–8–1(a)(1.5) (West 1998). Therefore, in line with 
Duszkewycz
, the second degree murder conviction, as the less serious offense, should have been vacated.

The State argues that in 
Duszkewycz
 we were somehow concerned that two tribunals affected the sentences. While the State correctly points out that the jury and the trial court each imposed a sentence in 
Duszkewycz
, we find no hint in our opinion that we based our holding on that fact. Rather, we read 
Duszkewycz
 as standing for the proposition that the legislature determines the relative gravity of all offenses.

The State’s reliance on 
People v. Mack
, 105 Ill. 2d 103, 137 (1984), 
vacated on other grounds
, 479 U.S. 1074, 94 L. Ed. 2d 127, 107 S. Ct. 1266 (1987), does not alter our conclusion. According to the State, under 
Mack
, the legislative classification is significant, but not dispositive. In 
Mack
, the defendant was convicted of three counts of first degree murder for the killing of one person. Those counts charged the defendant (1) intentionally and knowingly shot the victim; (2) shot the victim knowing that such shooting created a strong probability of death or great bodily harm to the victim; and (3) shot the victim while committing a forcible felony, armed robbery. While noting that two of the three convictions must be vacated, we cited 
Duszkewycz
 for the rule that the relative punishments prescribed by the legislature for the offenses should determine the convictions to be vacated. 
Mack
, 105 Ill. 2d at 137. All three convictions in 
Mack
 were, however, capital crimes. Thus, the “penalty provided by the legislature g[ave] no help in making the determination” in that case. 
Mack
, 105 Ill. 2d at 137. We ultimately concluded that the most serious offense was the intentional and knowing conviction because it involved a more culpable mental state than the others. 
Mack
, 105 Ill. 2d at 137. In contrast, the two offenses here have different legislative classifications and penalties. Therefore, there is no need to resort to 
Mack
’s reliance on the mental states involved in the crimes.

Similarly, the State raises a
 mens rea
 argument, citing 
City of Chicago v. Hill
, 40 Ill. 2d 130, 136-37 (1968). In 
Hill
, we affirmed the conviction for the more specific crime and vacated the conviction for the more general crime. See 
Hill
, 40 Ill. 2d at 136-37 (disorderly conduct reversed, obstructing traffic affirmed). The offenses involved in 
Hill
 were both ordinance violations, and we noted that the city Code did not indicate whether one violation was considered more serious than the other. 
Hill
, 40 Ill. 2d at 136. This case does not present that classification problem.

In sum, the appellate court erred in concluding that the more serious offense in this case was second degree murder simply because the court opted to impose a greater prison sentence on that count. Instead, aggravated battery with a firearm is the more serious offense, and defendant’s conviction for second degree murder must be vacated.

CONCLUSION

For the foregoing reasons, we hold that the State proved beyond a reasonable doubt that defendant’s claim of self-defense was unreasonable. We therefore affirm the appellate court on that issue. We also hold that when vacating an offense for one-act, one-crime purposes in cases involving crimes of differing legislative classifications, the seriousness of each offense must be ascertained by the relative punishments prescribed by the General Assembly. In this case, defendant’s second degree murder conviction, a Class 1 felony, should have been vacated rather than his aggravated battery with a firearm conviction, a Class X felony. Accordingly, we reverse the appellate court on this issue and remand to the appellate court with directions to vacate defendant’s second degree murder conviction in favor of his aggravated battery with a firearm conviction, the sentence to run consecutively to defendant’s other 18-year sentence that has not been appealed. 

Appellate court judgment affirmed

 in part and reversed in part;

cause remanded with directions.

JUSTICE GARMAN took no part in the consideration or decision of this case.

JUSTICE THOMAS, concurring in part and dissenting in part:

Although I agree with the majority’s conclusion on the self-defense question, I do not agree with its conclusion on the one-act, one-crime question. Accordingly, I respectfully dissent.

The majority’s analysis is straightforward enough, and it begins with the following premise: “[i]t is common sense that the legislature would provide greater punishment for crimes it deems more serious.” Slip op. at 6. From here, the majority notes that aggravated battery with a firearm is a Class X felony with a sentencing range of 6 to 30 years, while second degree murder is a Class 1 felony that with a sentencing range of 4 to 20 years. Slip op. at 6-7. Then, looking no further than the respective ranges’ minimum and maximum sentences, the majority deduces that second degree murder is, as a matter of law and in all cases, the less serious offense.

Unlike the majority, I do not believe that the relative seriousness of two offenses is simply a function of the upper and lower limits of their respective sentencing classifications, as this approach wholly ignores what falls in between. More specifically, the majority ignores the fact that, in crafting this state’s sentencing scheme, the legislature built in a great deal of overlap between different sentencing classes, leaving to the sentencing court the task of defining the appropriate punishment in a given case. The offenses at issue in this case provide a perfect illustration. As far as the legislature is concerned, an aggravated battery with a firearm might justify as little as 6 years in prison or as many as 30 years in prison, depending upon the facts of the particular case. Likewise, as far as the legislature is concerned, a second degree murder might justify as little as 4 years in prison or as many as 20 years in prison, depending upon the facts of the particular case. Thus, in creating these two offenses, the legislature specifically allowed for the possibility that,
 in a particular case
, a second degree murder might be more serious and therefore command a greater sentence than an aggravated battery with a firearm.

Given this reality, it is simply impossible to say categorically, as the majority does, that 
all
 aggravated batteries are more serious than 
all
 second degree murders as a matter of law. Indeed, had the legislature felt this way, it would have created mutually exclusive sentencing ranges, with the maximum sentence for second degree murder falling somewhere below the minimum limit for aggravated battery with a firearm. But this is not what the legislature did. On the contrary, it created broad and largely overlapping sentencing ranges, leaving it to the trial court’s discretion to evaluate and ascertain the seriousness of these and other offenses on a case-by-case basis. Accordingly, I would look to the sentences 
actually imposed
 in a given case when identifying the most serious offense.

Significantly, 
Duszkewycz
 does not foreclose this result. In 
Duszkewycz
, the defendant was convicted of rape and incest, based upon the same act. At that time, rape was punishable by a prison term of one year to life, with sentence to be set by the jury. Ill. Rev. Stat. 1961, ch. 38, par. 490. Incest, in turn, was punishable by a prison term of 1 to 20 years, with sentence to be set by the court. Ill. Rev. Stat. 1961, ch. 38, par. 374. Defendant was sentenced to 5 years for the rape and 20 years for the incest. On appeal, this court held that, because both convictions arose from the same act, only the conviction for the greater offense could stand. 
Duszkewycz
, 27 Ill. 2d at 261. The court then explained:

“The relative gravity of the two offenses involved in the single act in this case can not depend upon the sentences actually imposed, on the rape charge by the jury and on the charge of incest by the judge. A touchstone more reliable than the subjective reaction of different tribunals to the same facts is required, and we therefore turn to the appraisal made by the General Assembly.” 
Duszkewycz
, 27 Ill. 2d at 261.

After looking to the respective sentencing ranges, the court stated: “It is clear that the General Assembly has regarded rape as the more serious of the two offenses involved in this case.” 
Duszkewycz
, 27 Ill. 2d at 262. Accordingly, the court vacated the 20-year sentence for incest and affirmed the 5-year sentence for rape. 
Duszkewycz
, 27 Ill. 2d at 263.

Incredibly, the majority finds “no hint” that the decision in 
Duszkewycz
 was influenced by the fact that “two tribunals affected the sentences.” Slip op. at 7. With respect to my colleagues in the majority, might such a “hint” not be found in the passage set out above, which is also set out in the majority opinion? Slip op. at 6. In the first sentence of this passage, the court explains that “[t]he relative gravity of the two offenses 
involved in the single act in this case 
can not depend upon the sentences actually imposed, on the rape charge by the jury and on the charge of incest by the judge.” (Emphasis added.) 
Duszkewycz
, 27 Ill. 2d at 261. This sentence seems to be saying that, while the sentences actually imposed might 
ordinarily
 be the standard by which the relative seriousness of multiple offenses is governed, that standard is inapplicable where different tribunals impose the relevant sentences. Why else would the court have limited its holding to “the two offenses involved *** 
in this case
”? Conversely, 
if the majority is correct, and 
Duszkewycz
 “stand[s] for the proposition that the legislature determines the relative gravity 
of all offenses
” (emphasis added) (slip op. at 7), would not the court in 
Duszkewycz
 have stated that “[t]he relative gravity of the two offenses 
in all cases 
can not depend upon the sentences actually imposed”? By explicitly limiting its impact to the “two offenses involved *** 
in this case
,”
 
Duszkewycz 
implies that looking to legislative classifications rather than the sentences actually imposed is the exception, not the rule.

The second sentence of the quoted passage only underscores this interpretation:

“A touchstone more reliable than the subjective reaction of different tribunals to the same facts is required, and we therefore turn to the appraisal made by the General Assembly.” (Emphasis added.) 
Duszkewycz
, 27 Ill. 2d at 261.

The placement of “therefore” in this sentence confirms that the court in 
Duszkewycz
 turned to legislative classifications only because
 
a touchstone more reliable than the subjective reaction of different tribunals to the same facts was required. This, of course, begs the question: Is it also necessary to turn to legislative classifications when a touchstone more reliable than the subjective reaction of different tribunals is 
not 
required? Although 
Duszkewycz
 does not expressly say, the above passage strongly suggests that it is not. At the very least, 
Duszkewycz 
is not nearly as dispositive of the question presented as the majority seems to believe, and the State’s argument that 
Duszkewycz
 is distinguishable from the present case is well taken.

The bottom line is that, in this case, the trial court clearly believed that 
this particular 
second degree murder was more serious than 
this particular
 aggravated battery with a firearm. The legislature specifically allowed for this result, and I see no compelling reason to set it aside. I therefore dissent on this point.