2020 IL App (2d) 180297-U
No. 2-18-0297
Order filed October 28, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CM-1 |
| DAPHNE THOMPSON, | ) ) ) | Honorable John F. McAdams, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices Bridges and Brennan concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The State presented sufficient evidence upon which the jury reasonably could have concluded that defendant did not act in self-defense during the altercation in her car with the victim.

¶ 2   Defendant, Daphne Thompson, appeals her conviction of two counts of misdemeanor domestic battery (720 ILCS 5/12-3.2(a)(1), (2) (West 2016)) following a jury trial in the circuit court of Kendall County. She argues that the State failed to disprove her claim of self-defense beyond a reasonable doubt. For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4    On January 1, 2017, defendant and Theodore Moore, with whom defendant had been in an intimate relationship for three years, had plans to go out for the evening. Defendant picked up Moore around 5:30 p.m. from his apartment in Aurora and drove to Chicago where they had dinner and drinks.  Around 11:45 p.m., they decided to leave Chicago and travel to a casino in Joliet. Along the way, they stopped at a Speedway gas station in Oswego. Defendant entered the gas station around 12:40 a.m. to prepay and returned to the vehicle to pump gas.

¶ 5    As defendant was getting back into her car, she observed that Moore was on the phone. The phone in question belonged to defendant, but she had loaned it to Moore several months earlier. Defendant suspected that Moore had been seeing another woman, Mia Steadmeyer, and that he was the father of Steadmeyer's four-month-old child. Defendant became angry because she believed that Moore was talking to Steadmeyer on the phone. However, Moore denied the allegations, testifying that he told defendant that he was talking to his now-deceased cousin. Defendant demanded that Moore give her the phone. The altercation that followed is the subject of this case.

¶ 6    Moore testified that when defendant saw him talking on the phone, she became hysterical and began screaming at him. As she entered the vehicle, she grabbed the phone from his hands and smashed it on the ground outside the vehicle. She then began attacking Moore. She scratched his face and bit his leg behind his knee while he was trying to get away. Moore testified that he never retaliated and was pleading for her to stop. As he attempted to collect his belongings and exit the vehicle, she continued to attack him and bit his chest. Photos presented at trial showed Moore had numerous bleeding scratches all over his face. He also had two open-wound bite marks on his chest and leg. Moore testified that he finally managed to open the passenger door, grabbing his coat and defendant's cell phone as he exited the vehicle. He then walked into the gas station store.

¶ 7    Defendant testified that she was very angry when she confronted Moore. She wanted him to return the phone she had loaned him months ago because she believed he was talking to Steadmeyer. When he ignored her, she "snatched" the phone from him. She stated that Moore became angry and began yelling at her. He then retaliated by grabbing her other phone. When she reached to get it back, he grabbed her by the neck with one hand and pulled her towards his chest, so she bit him on the chest to defend herself. She testified that she could not breathe because he was choking her. Moore then pushed defendant's head between his legs and continued to choke her and hit her in the back of the head. At that point, defendant bit Moore's leg and reached backwards with her right hand to claw at his face in an attempt to get him to release her. Defendant said her efforts made Moore release her, and she exited the car. Defendant explained that she became more upset after Moore had attacked her, which is why she slammed the phone she had loaned him down on the ground near the gas pump. Defendant then followed Moore into the gas station to retrieve her own phone that Moore had taken when he exited the car.

¶ 8    Defendant testified that she was yelling at Moore as she followed him into the store, demanding the return her phone. She testified that Moore would not return the phone at that time. Defendant left the store briefly to move her car to a parking space. When defendant re-entered the store, Moore handed her the phone. Defendant then left.

¶ 9    Surveillance video from inside the gas station shows Moore entering the store with defendant following closely behind. Moore testified that defendant was hostile and yelling at him while in the store and he was trying to stay away from her. Video shows a black object in Moore's hand, identified as defendant's cell phone. Moore testified that when he realized the cell phone in his hand was defendant's, he put it on the counter. Moore is seen in the video backing away from defendant and placing the phone on the counter. Defendant is seen picking up the cell phone from

the counter and exiting the building. A few moments later, defendant re-enters the gas station, engages in another animated discussion with the cell phone in her hand, and then leaves again.

¶ 10    Officer Jordan Lombardi of the Oswego Police Department responded to a call from the gas station. Upon his arrival, Officer Lombardi observed injuries on Moore's face and body. Moore received treatment at the scene from Oswego paramedics. Moore showed Officer Lombardi where the car was parked when the incident took place and Officer Lombardi observed the cell phone pieces on the ground near the gas pump. Moore was taken to the Oswego police station to make a written statement.

¶ 11    Defendant was not at the gas station when the police arrived. Upon exiting the gas station, she immediately drove to Steadmeyer's residence. She intended to confront Steadmeyer and talk to her "woman to woman" about Moore lying to them. She did not go there to fight and denied possessing a weapon. Collette Snow, Steadmeyer's mother, answered the door. Snow observed that defendant was very upset, and defendant asked to talk to Steadmeyer, who had come to answer the door as well. Snow testified that defendant exclaimed that she had "just left [Steadmeyer's] man on the side of the road cut up." Defendant also verbally threatened Steadmeyer and her infant child. Snow testified that defendant had a small knife in her hand. To calm the situation, Snow asked defendant to sit down and explain what had happened. Snow did not observe any injuries on defendant. After explaining what had happened that evening at the gas station, defendant left.

¶ 12    Thereafter, Snow received a call from the police asking her to come pick up Moore. Snow, accompanied by Steadmeyer and two children, drove to the Oswego Police Department to pick up Moore. Snow testified that defendant followed them in her vehicle for some time. Snow told the officers about defendant showing up at the apartment.

¶ 13    After leaving the police station with Moore, the group stopped at another gas station. Defendant appeared at the same gas station and confronted them. The police arrived and separated the parties. They spoke with defendant for several minutes before she was arrested. Defendant testified that she was angry, yelling and cussing at the police because she wanted to make a statement. Officer Benjamin Heckl, who transported defendant to jail that evening, testified that defendant was agitated and yelling at the officers. While placing her in the car, Officer Heckl had a good look at defendant's face.  He did not observe any bruising or swelling, and defendant did not complain of any injuries. During the 20-minute ride to the jail, defendant made statements about exorcism and religion and derogatory statements about Officer Heckl. Defendant acknowledged that she was yelling and agitated and explained that she was praying to herself because the police did not let her make a statement.

¶ 14    Defendant spent two days in jail. On January 3, she returned to the police station to complain of injuries and complete a written statement in the presence of Officer Kelly Garcia. Defendant testified that she suffered a bump on her head, small scratches on her finger, and an injury to her lip. In her written statement, defendant wrote that Moore had pulled her hair and punched her in the mouth and eye. She testified that she must have forgotten to include that Moore had pushed her head between his legs, pulled her into his chest, and hit her on top of the head. Officer Garcia took photos of defendant's arms, hands, neck, lip and face which were admitted into evidence. Officer Garcia testified that she observed a small abrasion inside defendant's upper lip and two small abrasions on one finger of each hand.  Officer Garcia did not see any injuries to defendant's face, neck or arms. She explained that it is common procedure in domestic cases to take photos of a person's forearms because this is usually where defensive wounds would appear.

¶ 15    The jury found defendant guilty on one count of domestic battery causing bodily harm (720 ILCS 5/12-3.2(a) (West 2016)) and one count of domestic battery by making physical contact of an insulting or provoking nature (720 ILCS 5/12-2.3(b) (West 2016)). The counts were merged for sentencing and defendant was sentenced to 12 months' probation, two days in the Kendall County jail with credit for time served, and a $10 credit for two days of pretrial detention. She was fined $300, assessed court costs and fees, and ordered to have no contact with Moore. This timely appeal followed.

¶ 16                                II. ANALYSIS

¶ 17    Defendant contends that the State failed to disprove that she acted in self-defense during the altercation with Moore in her car. "Self-defense is an affirmative defense, and once a defendant raises it, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense." *People v. Lee,* 213 Ill. 2d 218, 224 (2004). Defendant does not dispute the elements of either domestic battery offense but focuses her challenge on the issue of self-defense.

¶ 18    "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." 720 ILCS 5/7-1(a) (West 2016).  A person acts in self-defense when (1) unlawful force was threatened against him or her, (2) he or she was not the aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) he or she actually and subjectively believed a danger existed that required use of the force applied, and (6) his or her beliefs were objectively reasonable. *Lee*, 213 Ill. 2d at 225.  If the State negates any element of the self-defense claim, the claim must fail. *Id.*

¶ 19    When reviewing a challenge to the sufficiency of the evidence, the relevant inquiry is whether, when viewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* It is the function of the jury, as the trier of fact, to assess the credibility of the witnesses, to assign weight to the witnesses' testimony, to resolve conflicts or inconsistencies in the evidence, and to draw reasonable inferences from the evidence. *People v. Gray,* 2017 IL 120958, ¶ 35. On these matters, the reviewing court will not substitute its judgment for that of the trier of fact. A criminal conviction will only be reversed for insufficient evidence where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. *Id.*

¶ 20    Defendant argues that "the most that can be said about this case is that it is unknown whether defendant or Moore was the aggressor." However, the record reveals much more. Defendant initiated the confrontation with Moore. Moore was sitting in defendant's car and talking on the phone. Defendant acknowledged that this angered her because she believed he had been unfaithful and was talking to another woman. She demanded that he immediately give her the phone. When Moore ignored her, defendant took the phone out of his hand. Moore testified that defendant became hysterical and violently attacked him, scratching his face and biting him on the leg and chest as he tried to exit the vehicle. Defendant testified that it was Moore who grabbed her first and she defended herself. Once out of the vehicle, defendant followed Moore into the gas station continuing to yell at him. A rational jury could infer from the events that defendant was the aggressor in this altercation and there was no unlawful threat of harm against the defendant prior to her scratching and biting Moore.

¶ 21    To support her contention, defendant states that the record "readily reveals" her version of the altercation and she recounts her testimony as to what happened. However, the record also

reveals all of the other evidence presented to the jury, including Moore's account of the events, video surveillance footage of the moments following the altercation, photographs of defendant and Moore evincing their physical condition after the altercation, and the testimony of several other witnesses who observed defendant and Moore soon after the incident. A jury need not accept a defendant's claim of self-defense. *People v. Grayson,* 321 Ill. App. 3d 397, 402 (2001). "In assessing a self-defense claim, the jury considers 'the probability or improbability of the defendant's account, the circumstances surrounding the crime, and the relevant testimony of other witnesses.' " *People v. Olaska,* 2017 IL 150567, ¶ 146 (quoting *People v. Young,* 347 Ill. App. 3d 909, 920 (2004)). When presented with all the evidence including the conflicting accounts of the altercation, the jury assessed Moore's account of the altercation as more credible than defendant's account. Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found beyond a reasonable doubt that defendant did not act in self-defense.

¶ 22    Finally, defendant argues that the jury may have been "overly persuaded by Officer Garcia, who was allowed to testify like an expert, but without qualifications." As the State correctly notes, defendant made no substantive argument that Officer Garcia presented an improper expert opinion; therefore, this argument is waived because it was not properly preserved for appeal. *People v. Psichalinos,* 229 Ill. App. 3d 1052, 1065 (1992) (a defendant is required to make both a trial objection and a written, post-trial motion raising the issues if the alleged errors could have been raised during trial).

¶ 23    Furthermore, defendant mischaracterizes Officer Garcia's testimony when she contends that Officer Garcia stated that lack of defensive injuries on defendant was reason to believe defendant had not been attacked. Officer Garcia was present when defendant completed her written statement two days after the incident. She also took photographs of defendant to document

defendant's physical state because she complained of injuries resulting from the altercation with Moore. Referring to the photos, Officer Garcia described seeing the small cuts on two fingers as well as the injury inside defendant's lip. She testified that she saw no visible injuries to defendant's face, neck, or forearms. Officer Garcia explained that she took photos of defendant's forearms because it was common practice to do so in domestic cases because forearms will often show defensive wounds. Her stated objective was to be as thorough as possible in documenting defendant's injuries. On cross-examination, Officer Garcia acknowledged that all domestic batteries are different, that defensive wounds are not always present, and that even a push resulting in no visible bruise could be a domestic battery. Officer Garcia's testimony reflected her observations and explanation for why she followed certain procedures. It was the jury's responsibility to draw any reasonable inferences from these and other facts.

¶ 24    The jury heard and saw the witnesses and was in the best position to consider their credibility, resolve any inconsistences, and determine the weight to be afforded to their testimony. Viewing the evidence in the light most favorable to the State, coupled with the reasonable inferences that may be drawn therefrom, we conclude that a rational trier of fact could have found beyond a reasonable doubt that defendant did not act in self-defense.

¶ 25                            III. CONCLUSION

¶ 26    For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 27    Affirmed.