2022 IL App (1st) 190890-U

No. 1-19-0890

Order filed October 12, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 10737 |
| | ) | |
| JAMAAL BURNETT, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice McBride and Justice Gordon concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the judgment of the circuit court over defendant's contention that the State failed to disprove his claim of self-defense beyond a reasonable doubt.

¶ 2    Following a bench trial, defendant Jamaal Burnett was found guilty of aggravated battery, domestic battery, and unlawful restraint, then sentenced to a five-year term of imprisonment. The charges stemmed from an altercation that took place between defendant and the mother of his children, Shanan Krefft. Defendant entered Krefft's home and cornered one of her children, Leroy Dinkins (Tre), in the kitchen. Krefft attempted to obtain Tre's release from defendant, and in the

ensuing confrontation, defendant bit Krefft on the arm. Defendant asserted that he acted in self-defense because Krefft was the initial aggressor, and defendant had no intention of harming Tre or Krefft. The court rejected defendant's claim of self-defense, and found him guilty.

¶ 3    On appeal, defendant contends that the court erred in rejecting his claim of self-defense. Defendant asserts that the evidence presented shows that before he bit Krefft, Krefft grabbed his fingers and bent them backward, causing him injury. Defendant maintains that Krefft acted violently despite the fact that defendant did not physically threaten to harm her or Tre. Defendant contends that Krefft was therefore the initial aggressor, and he was entitled to defend himself from her unlawful use of force. Defendant asserts that the State failed to prove beyond a reasonable doubt that he was not acting in self-defense. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 4                                  I. BACKGROUND

¶ 5                             A. Other Crimes Evidence

¶ 6    Prior to trial, the State moved to admit proof of other crimes. The State sought to admit evidence of defendant's previous convictions for domestic violence to establish defendant's motive, state of mind, and intent. The State presented evidence of five incidents all involving defendant and Krefft. After hearing argument from both parties, the court permitted the State to admit evidence of two incidents, one that occurred in September 2011, and another that occurred in November 2010. In both cases, defendant was convicted of domestic battery.

¶ 7                                    B. Trial

¶ 8    At trial, Krefft testified that she had six children, and that defendant was the father of her four youngest children. Krefft testified that she and defendant had a ten-year, on-and-off, volatile relationship. Krefft first testified regarding the two other crimes incidents that took place in

September 2011 and November 2010. With regard to the September 2011 incident, Krefft testified that she was staying at a hotel when defendant called her and asked if he could take a shower at her hotel room. Krefft agreed and defendant came to her room. Defendant asked Krefft about the hotel room being registered in the name of a man. Krefft told him that the room was registered in her name and that she paid for it. Defendant threw Krefft onto the bed and they got into an "altercation." Krefft called police and defendant was charged with domestic battery. In October 2011, defendant pled guilty to that charge.

¶ 9 With regard to the November 2010 incident, Krefft testified that at the time she was living with defendant in his parents' house. Krefft testified that on Thanksgiving weekend, defendant accused her of trying to set him up because she had just recently left a domestic violence shelter. Krefft testified that they "scuffled" on the couch and defendant took her phone. Defendant caused Krefft "[a] whole bunch of choke marks [and] scratches." Krefft called the police the next day and defendant was charged and eventually convicted of domestic battery.

¶ 10 Krefft then testified regarding the incident at bar that occurred in June 2017. Krefft testified that she moved into a house on the west side of Chicago in March of 2017 with defendant and her six children. Defendant stayed with them for about three weeks before moving out of the residence in April. On the morning of the incident, Krefft was drinking coffee on her front stoop while the children were sleeping upstairs. Defendant arrived holding a bag with some toys that he had brought for the children. Krefft thanked defendant for the toys, but told him that the children really needed clothing and diapers.

¶ 11 Defendant asked to see the children, but Krefft told him no. Krefft went back into the house and started to close the door, but defendant pushed the door open and said he was going to see his children. Krefft tried to close the door on defendant, but he shoved the door back into her and she

"flew into the wall." Defendant walked past Krefft and went upstairs to wake up the children. Krefft followed defendant upstairs. Defendant was yelling at the children because they were sleeping in the same bed. Defendant told them that only "gay people sleep in the same bed as their brothers." Krefft retrieved the two youngest children from the bedroom and took them into the kitchen to eat.

¶ 12    Krefft then saw defendant and Tre come out of the bedroom together with defendant directing him into the kitchen. Krefft saw defendant's hand on Tre's arm and explained that defendant "has this thing where he grabs them by the arm and squeezes and makes them go where he wants them to go." When defendant and Tre came into the kitchen, Krefft started recording them on her cellphone. Defendant attempted to grab the cellphone out of Krefft's hands, but it fell onto the floor and the battery came out.

¶ 13    Krefft retrieved the parts of the cellphone, and started to walk toward the front door, but returned to the kitchen. She observed that defendant had trapped Tre in the corner of the kitchen by standing in front of him and placing his arms on the countertop on either side of him. Krefft saw that defendant was holding his phone in one of his hands, so she reached for it. Krefft explained that she tried to grab his phone, but "like it just happened so fast, but in the process I think I grabbed his hand, and I was trying to get him up off my son." Krefft testified that she did not pull back his fingers at that point, but was only trying to grab his phone. When she grabbed defendant's hand, defendant bit her on her left wrist. After defendant bit Krefft, she said "oh, really? I got you," and she ran out the door. Krefft put her cellphone back together and called police.

¶ 14    Krefft told the 911 operator that she needed medical attention, so firefighters, police, and an ambulance all arrived at her house. When police arrived, defendant walked out of the house

with his arm around Tre. Krefft explained to the responding officers what happened, and the officers separated defendant and Tre. The State then introduced photographs of the bite marks on Krefft's arm and played the video from her cellphone recording for the court.

¶ 15    In the video, defendant is standing with his back to the camera facing Tre, who is standing in the corner. Defendant is yelling into Tre's face while Tre looks down and away from defendant. Defendant is yelling about Tre sleeping in a bed with all of his brothers. Krefft then asks Tre if he wants to leave, but defendant puts his arm around Tre and walks him away. Defendant then directs Tre to tell the camera what he does not "like around here," but Tre does not speak. Krefft then asks Tre if he likes defendant being around, but Tre does not respond. There then appears to be a scuffle over the phone while the camera shakes. Defendant then can be heard saying: "She tried to break my fingers." Krefft can be heard in the background repeatedly asking defendant to give her back her phone. The recording then abruptly ends.

¶ 16    Krefft explained that the video cut off abruptly because that was when her cellphone fell to the ground and the battery came out. Finally, Krefft testified that at the time of the incident, she was three months pregnant with defendant's child and defendant knew she was pregnant.

¶ 17    On cross-examination, Krefft denied that she grabbed defendant's fingers when she was trying to grab his phone. She testified that she grabbed his fingers when she was attempting to retrieve her phone form him. Krefft testified that on the video recording "[y]ou heard him say I bent his finger." Defense counsel then asked Krefft about testimony she gave at a domestic violence court proceeding in July 2017 where she testified that, "I grabbed for [defendant's] hand and to grab the phone, but I grabbed his fingers, and I bent his fingers back to divert attention from my son to me." Krefft testified that defendant bit her after she grabbed his fingers.

¶ 18    Tre testified that he was 13 years old at the time of the trial, and that defendant is his stepfather. Tre testified that at the time of the incident, he had been living with his mother, Krefft, and his four half-brothers, all of whom were defendant's biological children. Tre testified that morning he was sleeping in Krefft's room in a bed with his four younger brothers. Around 9:50 that morning, defendant came into the room and started yelling. Defendant told Tre that he was not supposed to be "laying in bed with my brothers because that [*sic*] gay." Defendant then grabbed Tre's arm and walked him into the kitchen.

¶ 19    Tre testified that while they were in the kitchen, defendant was trying to grab him to keep him close. Krefft then entered the kitchen and tried to "protect" Tre by getting him away from defendant. Krefft took out her cellphone and started recording them, but defendant tried to block Tre from the camera. Krefft's cellphone then got "thrown on the floor" and the battery popped out. Krefft was able to retrieve the pieces and put the battery back into the cellphone and then went toward the front of the house. Tre and defendant stayed in the kitchen. Tre testified that defendant was not touching him, but was blocking him into a corner and preventing him from leaving. Defendant had his arms extended to either side of him holding onto a table so that Tre could not get around him. Tre acknowledged that he never asked defendant if he could leave the kitchen.

¶ 20    Krefft returned to the kitchen and tried to grab her phone out of defendant's hand. Defendant bit Krefft on the wrist when she reached for the phone.[1] Krefft then went back toward the front of the house and called police. Defendant put his arm around Tre and then led him out of the front door of the house into the front yard. Outside, Tre saw firefighters and ambulances. Police then arrived and separated defendant and Tre.

---

[1]There is an inconsistency in evidence presented whether defendant bit Krefft after she tried to grab her own phone away from him or whether she was attempting to take his phone.

¶ 21 Officer Lukasz Gorcynski testified that when he and his partner arrived at Krefft's residence, he observed defendant standing on the sidewalk with his arm around Tre. Officer Gorcynski testified that Tre was "unable to leave or move anywhere." Officer Gorcynski approached defendant and Tre and asked them what was happening. After "some inquiry" defendant released Tre and was arrested.

¶ 22 After the State rested, the defense moved for a directed finding with regard to the charges of home invasion and residential burglary. Counsel argued that defendant was living at the residence and did not enter the home with the intent to commit a battery. Defense counsel also contended with regard to the battery and aggravated battery counts that defendant acted in self-defense. Counsel pointed out that defendant bit Krefft only after she grabbed his fingers and bent them to divert his attention.

¶ 23 The court denied defendant's motion with respect to the battery and aggravated battery charges, but granted it with respect to the charges for home invasion and residential burglary. The court found that the State had failed to prove beyond a reasonable doubt that defendant entered the house without authority. The court pointed out that defendant was the father of the children, had stayed at the house before, and brought toys for the children. The court found that there was a "disagreement" after Krefft told defendant that he could not see his children, which led to Krefft and defendant shoving the front door toward each other. The court found, however, that this did not amount to proof beyond a reasonable doubt that defendant entered without authority.

¶ 24 Defendant testified on his own behalf that on the morning of June 28, he was in the living room of Krefft's home. Defendant fed his younger sons and then spoke with Tre who told him that all of the children were sleeping in one room. Defendant told Tre that if he had a problem with that, he would tell Krefft. Krefft became angry and told defendant to leave. Defendant said that he

would leave, but he wanted to speak to his children about the sleeping arrangement first. Krefft then went outside threatening to call the police. Tre would not leave with Krefft, so Krefft took out her cellphone and started recording them.

¶ 25    Krefft dropped her phone, and then reached out to grab defendant's phone, but defendant moved his phone into his other hand. Krefft instead grabbed two of defendant's fingers and bent them backward. Defendant testified that he went down onto one knee because he thought she was going to break his fingers. Defendant asked Krefft to let go of his fingers, but when she did not, he bit her because "that was the closest thing I could do to get her to let me go." Defendant testified that after he was arrested, police took him to the hospital to have splints put on the fingers Krefft had bent backward.

¶ 26    Following closing argument, the court rejected defendant's claim of self-defense. The court found that based on Tre and Krefft's testimony, in addition to the video, it was clear that defendant was the aggressor. The court found that defendant was aggressive in the manner in which he entered the house and the way he was yelling at Tre. The court stated that the video did not depict a conversation between defendant and Tre, but rather portrayed defendant yelling at Tre and keeping him in a corner. The court found that based on Tre's testimony and his demeanor on the video, it was clear that Tre was the ultimate victim in a situation created by defendant. The court did not believe that Krefft was the aggressor, but was instead attempting to protect her child. The court therefore found defendant guilty of aggravated battery, domestic battery, and unlawful restraint. The court subsequently sentenced defendant to a 5-year term of imprisonment. This appeal follows.

¶ 27                                  II. ANALYSIS

¶ 28    On appeal, defendant contends that the court erred in finding him guilty of aggravated battery and domestic battery because the State failed to prove beyond a reasonable doubt that defendant did not act in self-defense. Defendant asserts that the burden of proof to disprove his theory of self-defense rested with the State and the State failed to meet its burden by establishing that defendant was the initial aggressor. Defendant maintains that the evidence demonstrated that he did not use physical force or threaten to use physical force against either Krefft or Tre. Defendant contends that Krefft was the initial aggressor, and defendant bit her only after she grabbed his fingers and bent them backward.

¶ 29                          A. Justifiable Use of Force

¶ 30    Defendant maintains that the record shows that he was justified in using force to terminate Krefft's assault when she grabbed his fingers and bent them backward. To raise a claim of self-defense, the defendant must present evidence that: (1) he was threatened with force; (2) he was not the aggressor; (3) the danger of harm was imminent; (4) the threatened force was unlawful; (5) he "actually believed that a danger existed, that the use of force was necessary to avert the danger, and that the kind and amount of force actually used was necessary"; and (6) his beliefs were reasonable. *People v. Morgan*, 187 Ill.2d 500, 533 (1999); see also, 720 ILCS 5/7-1 (West 2020). Self-defense is an affirmative defense, and once it is raised, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense. *People v. Lee*, 213 Ill. 2d 218, 224 (2004). The State can satisfy its burden and defeat defendant's claim of self-defense by disproving any one of the six elements. *People v. Gray*, 2017 IL 120958, ¶ 50.

¶ 31    "In deciding a claim of self-defense, it is the function of the [trier of fact] to assess the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn

from the evidence." *Id.* ¶ 51 (citing *Lee*, 213 Ill. 2d at 225). It is also the function of the trier of fact to resolve any conflicts or inconsistencies in the evidence. *Id.* We will reverse the ruling of the trial court rejecting a defendant's claim of self-defense only if we find, after viewing the evidence in a light most favorable to the State, that no rational trier of fact could have found beyond a reasonable doubt that defendant did not act in self-defense. *Id.*

¶ 32    Defendant contends that the court erred in finding that he was the initial aggressor. Defendant asserts that the court erroneously relied on his actions when entering the house in finding that he was the initial aggressor despite previously granting his motion for a directed finding on the counts for home invasion and residential burglary. Defendant further maintains that neither Tre nor Krefft testified that defendant physically assaulted them or threatened to do so. Defendant contends that Krefft's testimony and the video recording from her cellphone establish that Krefft was the initial aggressor and defendant was defending himself when he bit her.

¶ 33    We first observe that in rejecting defendant's claim of self-defense, the court explicitly stated that it that it considered the credibility of each of the witness. The court "paid attention to not only what they were saying, [but also] how they were saying it, their demeanor in court." The court found that based on the testimony of Krefft and Tre, along with the video, that it was clear "beyond any doubt that [defendant] was the aggressor here." The court stated that its ruling was based in part on the look on Tre's face in the video and defendant's demeanor in the video where he was yelling in Tre's face. The court's ruling therefore suggests that it found the testimony of Krefft and Tre credible and did not find defendant's testimony credible.

¶ 34    We find that the record supports the trial court's ruling. The evidence is clear that defendant initiated the confrontation in this case. Defendant pushed past Krefft despite her desire that he not enter the home and wake the sleeping children. He, nonetheless, went upstairs and woke up the

children and yelled homophobic remarks at them. He then grabbed Tre, dragged him to kitchen, and proceeded to yell in his face while refusing to let him leave the kitchen. Krefft begged defendant to let Tre leave, but defendant would not. The court found that it was clear from the video recording and the testimony that Tre was afraid of defendant and wanted to get away from him but defendant would not let him leave. Such a conclusion is clearly supported by the record.

¶ 35    Krefft acknowledged that in an attempt grab her phone from defendant, she inadvertently grabbed his fingers and bent them backward. Defendant treats this admission as some sort of silver bullet completely excusing his actions both before and after she grabbed his fingers. However, the evidence clearly shows defendant was the aggressor in this case, both in the way he entered the home and his conduct once he was inside. Defendant denies making any physical contact with Tre or Krefft, but Krefft testified that defendant grabbed Tre's arm and directed to the kitchen against his will. He then cornered Tre in the kitchen and refused to let him leave, both physically holding onto him and trapping him the corner with his body. Tre's testimony makes clear that he believed he was in danger from defendant because he specifically testified that Krefft was trying to "protect" him from defendant. Defendant then followed up his aggressive behavior with physical violence by biting Krefft on the arm.

¶ 36    Defendant asserts that the cellphone video recording supports his claim that he bit Krefft to defend himself from her unlawful use of force. The only evidence in support of defendant's claim, however, is that on the recording defendant can be heard saying, "She tried to break my fingers." There is no visual evidence showing that Krefft actually grabbed defendant's fingers, that defendant went down to one knee in pain, or that defendant could only free himself from Krefft by biting her. What the video does show, however, is defendant's aggressive behavior in yelling in Tre's face, grabbing him by the arm, and cornering him in the kitchen.

¶ 37    Nonetheless, defendant contends that Krefft's physical attack was unlawful because she did not reasonably believe that force was required to protect herself or Tre from defendant. Defendant again points out that neither Tre nor Krefft testified that defendant made any threats of force against them, and Krefft did not testify that she believed Tre was in any danger. Defendant maintains that he was permitted to defend himself from Krefft's unlawful attack where she grabbed his fingers and bent them backward. As stated, however, Krefft grabbing defendant's fingers is not a panacea that absolves defendant of all wrongdoing. The trial court found that defendant's actions were clearly aggressive culminating in him biting Krefft. This conclusion is clearly supported by the testimony presented and the video evidence. Accordingly, we cannot say that no reasonable trier of fact would have found that defendant did not act in self-defense beyond a reasonable doubt.

¶ 38                                    III. CONCLUSION

¶ 39    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 40    Affirmed.