2021 IL App (1st) 190106-U

No. 1-19-0106

Order filed November 12, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 MC1 201352 |
| | ) | |
| VIRGINIA PETROV, | ) | Honorable |
| | ) | Clarence Burch, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHARON ODEN JOHNSON delivered the judgment of the court.
Justices Sheldon Harris and Mary Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's convictions for aggravated battery are affirmed over her contention that the State did not establish beyond a reasonable doubt that she lacked legal justification to support self-defense.

¶ 2    Following a bench trial, defendant Virginia Petrov was found guilty of two counts of battery (720 ILCS 5/12-3(a)(1) (West 2016)) and sentenced to two years of probation. On appeal, she contends that the State failed to establish beyond a reasonable doubt that she acted without legal justification. We affirm.

¶ 3    Defendant was charged with three counts of battery following an October 31, 2017, incident between herself, Germaine Awisha, Natalia Awisha, and Huy "Lu" Huynh.[1]

¶ 4    At trial, Germaine testified that on October 31, 2017, she went trick-or-treating with Natalia, Huynh, and others. Between 8 and 8:20 p.m., the group was crossing a street when a black Chevy pulled in front of them. The driver, whom Germaine identified as defendant in court, screamed that they egged her vehicle. Germaine and her friends fled, but defendant reversed, followed them into an I-Hop parking lot, and "tr[ied] to like almost hit" them. Defendant then followed them toward a Chipotle. Germaine told the group to enter the restaurant, but they ran back toward the I-Hop.

¶ 5    As the group crossed the street, a silver Chevy arrived "in the wrong lane." Two men exited and attacked the boys in the group. Germaine fled but saw Huynh on the street. Germaine returned, told the men to stop, and helped Huynh to a nearby parking lot. At this point, defendant exited her vehicle, grabbed Germaine's hair and shoulder, and hit her face and chest with a closed fist. After defendant pushed Germaine to the ground, Natalia tried to intervene but defendant also hit Natalia and pushed her to the ground. Germaine denied hitting defendant first. She had blood on her knees and face, scratches on her face, and pain in her knees, hips, and shoulder from falling to the ground.

¶ 6    Eventually, the two men pulled defendant away and told her, " 'Stop. It wasn't them. Let's leave.' " However, defendant reentered her vehicle, continued to scream at the group, and followed them back to the I-Hop parking lot. After the police and Germaine's parents arrived, Germaine went to a hospital. She had surgery to "put [her] shoulder back in place," and underwent three weeks of physical therapy. At trial, she identified photographs of her injuries.

_____

[1] For clarity, we will refer to Germaine Awisha and Natalia Awisha by their first names.

¶ 7    During cross-examination, Germaine testified that she was 17 years old on October 31, 2017. She denied egging anyone or seeing any egging. When defendant first arrived, Germaine thought the group was in the path of defendant's vehicle and they all moved. After a few seconds of yelling, defendant exited her vehicle and approached Germaine. At this point, the group ran to the I-Hop, hoping defendant would leave them alone. They then ran to the Chipotle and back to the I-Hop. Defendant remained in her vehicle while the two men, who had a firearm, followed Germaine's friends into an alley where Germaine lost sight of them.

¶ 8    Defendant then left her vehicle in the middle of the street, hit Germaine with a closed fist, and "tossed" her to the ground. Natalia tried to intervene but defendant fought her too. When Germaine stood, she had "really bad pain" in her shoulder. Huynh helped her, and Natalia retrieved Germaine's cell phone which defendant had "slammed" to the ground. Defendant continued to scream as she reentered her vehicle. Germaine told police that defendant chased the group with a vehicle, that two other men arrived in a silver Chevy, and about her phone. She did not remember whether she told the police that the men had a firearm. During redirect, Germaine testified that she had never seen defendant before this incident.

¶ 9    Huynh testified that when defendant arrived, he felt defendant would hit them with her vehicle. The group jogged away, but defendant followed. Although Germaine told the group to enter the restaurant, Huynh did not because defendant was already there. He wanted to go home, so the group returned to the I-Hop. A man hit Huynh, who fell to the ground, and Germaine and Natalia carried him to the side of the road. Defendant stopped her vehicle, said the group egged her vehicle, exited, and attacked Germaine. Defendant further stated that she would find them and go to their school. The man who hit Huynh then grabbed defendant and said that it was not "these

kids." Huynh helped Germaine and Natalia stand up, another friend called the police, and they crossed the street. Defendant followed and threatened them. Huynh had never seen defendant before October 31, 2017.

¶ 10    During cross-examination, Huynh testified that he was 16 years old on October 31, 2017, and denied egging vehicles. After one of the men hit Huynh, he thought both men chased the others, but was not paying attention. Defendant never touched Huynh. He was too scared to tell the police that defendant threatened to come to his school, but thought he reported that she chased them with her vehicle. He "heard" the men had a firearm, and thought that he saw it, but was not sure. He never told the police that defendant hit him, only that she hit Germaine and Natalia.

¶ 11    Natalia testified that as the group crossed the street, a speeding vehicle braked "really quickly," and defendant began shouting. The group, which was not in a crosswalk, ignored her, assuming she was upset because she had to stop. Natalia then remembered a vehicle chasing her, and defendant pulling her hair and punching her eye. Natalia hit her head on the ground, and due to that injury did not remember everything. She went to a hospital and identified photographs of her taken there. After being released, Natalia returned for checkups and had physical therapy for an eye "disorder" caused by being punched.

¶ 12    During cross-examination, Natalia testified that she was 15 years old on October 31, 2017. When defendant's vehicle arrived, Natalia ignored it. The group never reached Chipotle because defendant followed them and tried to "run [them] over." The situation was chaotic, with the group running between Chipotle and I-Hop while defendant drove after them. After defendant hit Natalia's eye with a closed fist, her head hit the ground and she blacked out. Two men in a different

vehicle had a firearm. She did not speak to the police at the scene but was present when Germaine told the police that the men had a firearm.

¶ 13    The defense presented Chicago police officer Leung, who testified that he spoke to defendant, Germaine, Natalia, and Huynh on October 31, 2017, and arrested defendant.[2] Defendant was cooperative. Leung did not recall whether Germaine, Natalia, and Huynh said defendant chased them with her vehicle or mentioned a silver Chevy but agreed that his report did not contain that information. He did not remember anyone mentioning men, a firearm, or a broken cell phone.

¶ 14    During cross-examination, Leung testified that defendant stated that she confronted the group because she believed they egged her vehicle. He did not see any eggs on her vehicle or in anyone's hands. Germaine, Natalia, and Huynh reported injuries to their shoulders and arms. He did not recall defendant stating she was "jumped." Although Leung's report stated that defendant was jumped and battered, defendant did not file a police report. Defendant was arrested and Germaine, Natalia, and Huynh were removed in an ambulance. His report stated that Germaine, Natalia, and Huynh said that two men were involved.

¶ 15    During redirect, Leung testified that defendant stated she was jumped and hit with closed fists which caused swelling to her eyes. He gave Germaine, Natalia, and Huynh the chance to sign complaints against defendant, but did not give defendant the same opportunity.

¶ 16    Defendant testified that she was 39 years at the time of trial and received Social Security disability benefits due to carpal tunnel syndrome and a severe pinched nerve. On October 31, 2017, she was at her mother's home with her three nephews, her daughter, and her daughter's boyfriend Austin Seegert. Around 8:30 or 9 p.m. she heard yelling. As defendant, her nephews, and Seegert

---

[2] The transcript does not contain Officer Leung's first name.

walked outside, she saw 20 teenagers, including Germaine, running through an alley. Germaine, who was holding a carton of eggs, fell, and defendant asked if she was alright. Germaine stood and said, " 'It's none of your business you fat B.' " Defendant's mother then exited the house, screaming that "they egged" a Corvette belonging to defendant's father. Defendant saw the eggs and told Germaine to clean the vehicle. At trial, defendant identified photographs of the vehicle with eggs on it taken on November 1, 2017.

¶ 17    Germaine swore at defendant, "charged at" her, and punched her face. A second girl jumped on defendant's back and hung onto her neck. Defendant tried to block the blows and heard her nephews crying and screaming. Huynh then "charged" defendant and punched her left eye with a lock, and she blacked out. Defendant had two black eyes and a "shattered" and swollen nose. At trial, defendant stated that her nose was still "crooked" and identified photographs of her injuries. Defendant was terrified because she thought the teenagers were armed and touched them only to protect herself.

¶ 18    Defendant checked on her nephews and mother, and the police were contacted. As she waited, defendant decided to take her nephews home. While driving, she observed the group that jumped her around the I-Hop, so she called 911, entered the parking lot, and waited. When the police arrived, she cooperated. The police did not speak with Seegert. After Leung entered the restaurant, there was commotion, "the parents" tried to attack her, and she was arrested 30 minutes later.

¶ 19    During cross-examination, defendant acknowledged taking her nephews outside the house after she heard screaming. About 20 teenagers were outside and she saw most of their faces because the alley was well-lit. Although she had never seen Germaine before, she "recognize[d]"

Germaine's hair. Defendant did not see anyone egg the Corvette, and defendant's mother, who did not know Germaine, did not say that Germaine did it.

¶ 20    After defendant told Germaine to clean the Corvette, Germaine began "talking bad" and punched her. She did not take her nephews inside, although one went inside for help. Defendant saw the face of the person who climbed on her back. After the boy hit her, she "[b]lacked out" in her left eye but could still see with the other eye.

¶ 21    Defendant told her mother to wait for the police, and that she would take her nephews home. She drove with blurry vision in one eye. When defendant spoke to the police, she said the group egged the Corvette because they were holding eggs when she originally saw them, and that she was jumped and punched. However, she denied telling officers that she drove up and confronted the perpetrators; rather, she walked by them in the alley. Defendant was not allowed to make a report that the Corvette was egged. At some point after this incident, defendant's mother bought a treadmill from Germaine's family, who lived nearby. During redirect, defendant stated that she did not file complaints against Germaine, Nathalia, and Huynh because she was arrested and not afforded the opportunity.

¶ 22    Seegert testified that defendant was his girlfriend's mother. When he and defendant went outside on October 31, 2017, he saw a girl fall while holding a carton of eggs. Seegert recognized her as Germaine, with whom he attended high school. When Germaine stood, she had "an attitude" about the Corvette, was defensive, and said she "was not the one that did it." Germaine walked toward defendant and attacked her. Seegert was not sure if Germaine hit defendant, although "others," including Germaine's sister and at least four boys, did "jump in." He then clarified that he saw Germaine touch defendant but did not know where. At one point, it was "two against one"

although defendant was "self-defensing." Then a boy hit defendant with a "school lock." After a few minutes, the kids fled. Seegert was in defendant's vehicle when they saw the kids who jumped defendant run into the I-Hop, and while defendant waited for the police.

¶ 23    During cross-examination, Seegert testified that Germaine was angry and ready to fight when she stood up. He did not see Germaine and Natalia hit defendant; rather, they jumped on her front and back while she was standing, and a boy hit defendant in the nose with a school lock. Seegert did not speak to the police because it was not his "business to tell" what happened. He did not want his girlfriend's mother to get into trouble.

¶ 24    The trial court found defendant not guilty of battering Huynh, but guilty of battering Natalia and Germaine. Following a hearing, the court sentenced defendant to two years of probation. Defendant filed a motion for a new trial, which was denied, and did not file a motion to reconsider sentence.

¶ 25    On appeal, defendant contends that the State failed to establish beyond a reasonable doubt that she acted without legal justification. She argues that her version of events, including that she acted in self-defense, made more sense than the account offered by the State's witnesses and that the injuries sustained by Germaine, Natalia, and herself were consistent with her evidence. She further argues that the testimony of the State's witnesses was improbable and contrary to human experience.

¶ 26    When reviewing a challenge to the sufficiency of the evidence, "the question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307,

319 (1979)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts presented at trial. *Id.* "In reviewing the evidence, this court will not retry the defendant, nor will we substitute our judgment for that of the trier of fact." *Id*. A defendant's conviction will be reversed only when the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of her guilt. *People v. Newton*, 2018 IL 122958, ¶ 24.

¶ 27　　Here, defendant was charged with battery in that, without legal justification, she knowingly caused bodily harm to Germaine and Natalia. 720 ILCS 5/12-3(a)(1) (West 2016). Defendant does not dispute that Germaine and Natalia were injured; rather, she contends that she acted in self-defense after Germaine and Natalia attacked her.

¶ 28　　To establish self-defense, a defendant must demonstrate that (1) unlawful force was threatened against her, (2) she was not the initial aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) she actually and subjectively believed a danger existed that required the use of force, and (6) her beliefs were objectively reasonable. *People v. Gray*, 2017 IL 120958, ¶ 50. Once a defendant raises the affirmative defense of self-defense, "the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense." *People v. Lee*, 213 Ill. 2d 218, 224-25 (2004). If the State negates any element of a defendant's claim, it fails. *Id*. at 225. A trier of fact need not accept a defendant's contention she acted in self-defense; it is a question of fact, and the court may consider the probability or improbability of the defendant's account, the circumstances surrounding the crime, and other witnesses' testimony. *People v. Young*, 347 Ill. App. 3d 909, 920 (2004).

¶ 29    Viewed in the light most favorable to the State, there was sufficient evidence for a rational trier of fact to find that defendant committed the batteries and was not acting in self-defense because she was the aggressor. Germaine, Natalia, and Huynh testified that defendant initially followed them with her vehicle and screamed and accused them of egging a vehicle. Germaine testified that defendant grabbed her hair, hit her with a closed fist, grabbed her shoulder, and threw her to the ground. When Natalia tried to intervene, defendant likewise hit Natalia and threw her to the ground. Germaine bled from the knees and face, had pain in her knees, hips, and shoulder, was hospitalized, and underwent shoulder surgery. Natalia also testified that defendant pulled her hair and punched her eye, and that she fell and hit her head on the ground, which caused memory issues. After being released from the hospital, Natalia had several checkups and treatment for an eye "disorder" caused by being punched.

¶ 30    Additionally, Germaine denied hitting defendant first, and Huynh testified consistently with Germaine that defendant attacked her. Huynh further testified that after the men pulled defendant away, he helped Germaine and Natalia off the ground. Officer Leung testified that Germaine, Natalia, and Huynh reported injuries to the shoulders and arms. This evidence, and the reasonable inferences therefrom, was sufficient for the trier of fact to find that defendant was the aggressor. See *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009) ("[T]he testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant.").

¶ 31    Defendant, however, contends that she acted in self-defense when Germaine, Natalia, and Huynh attacked her after she told Germaine to clean the eggs off the Corvette. She argues that her account made more sense than the version asserted by the State's witnesses.

¶ 32     As defendant notes, two versions of events were presented at trial. Germaine, Natalia, and Huynh denied egging the Corvette, and defendant acknowledged that she did not see it egged. The State's witnesses testified that defendant first confronted them in a vehicle, then followed them between the I-Hop and Chipotle, before exiting and pulling Germaine's hair, punching her, and tossing her to the ground. When Natalia intervened, defendant struck her, and she fell to the ground and hit her head. Huynh corroborated that the sisters were on the ground when he helped them up.

¶ 33     Defendant, on the other hand, testified that she encountered Germaine outside defendant's parents' home, and that Germaine became aggressive after being told to clean the Corvette. Thereafter, Germaine jumped on defendant's front, Natalia jumped on her back, and Huynh hit her eye with a lock. Police were called and she had blurry vision in one eye, but she decided to drive her nephews home and thereafter saw her attackers at the I-Hop. Seegert corroborated defendant's version of events but testified that he did not speak to police that night because it was not his "business."

¶ 34     Considering the two versions of events presented, the trial court did not find defendant's version credible as evidenced by its guilty finding. See *People v. Bradford*, 2016 IL 118674, ¶ 12 ("It is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts."). Once the court found defendant's version of events, including that Germaine, Natalia, and Huynh attacked her, incredible, it similarly discounted her testimony that she acted in self-defense. See *People v. Perez*, 100 Ill. App. 3d 901, 905 (1981) ("A jury is not required to accept as true the defendant's testimony concerning self-defense.").

¶ 35    Although defendant acknowledges that the State's witnesses testified consistently, she posits that their similar testimony could be "easily explained" by their friendship and argues that her testimony "rebutted" their incredible testimony. However, a trier of fact need not disregard inferences which flow normally from the evidence or seek all possible explanations consistent with innocence and raise them to the level of reasonable doubt. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60. Moreover, the trial court was not "required to accept the defendant's version of the facts." See *People v. Jacobs*, 2016 IL App (1st) 133881, ¶ 53.

¶ 36    In the case at bar, the trial court found the testimony that defendant attacked Germaine and Natalia to be credible and rejected the testimony to the contrary. This court will not retry a defendant and overturn the trial court's credibility determinations on appeal simply because a defendant claims a witness was incredible. *Lee*, 213 Ill. 2d at 225 (in deciding a self-defense claim, it is the function of the trier of fact to assess the credibility of the witnesses and resolve conflicts or inconsistencies in the evidence). Accordingly, viewing the evidence in the light most favorable to the State, we cannot say that no rational trier of fact could have concluded that defendant struck and caused bodily harm to Germaine and Natalia. We reverse a defendant's conviction only when the evidence is so unreasonable, improbable, or unsatisfactory that reasonable doubt of her guilt remains (*Newton*, 2018 IL 122958, ¶ 24); this is not one of those cases. Defendant's convictions for battery are therefore affirmed.

¶ 37    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 38    Affirmed.