2026 IL App (1st) 241669-U

No. 1-24-1669

Order filed April 30, 2026

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 MC1 191443 |
| | ) | |
| TASHAUNA MCGEE, | ) | Honorable |
| | ) | Daniel J. Gallagher, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE QUISH delivered the judgment of the court.
Presiding Justice Navarro and Justice Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm defendant's conviction for battery over her contention that the State failed to disprove her self-defense claim beyond a reasonable doubt.

¶ 2    Following a bench trial, defendant Tashauna McGee was found guilty of battery and sentenced to six months of supervision. On appeal, defendant contends that the State failed to disprove her self-defense claim. For the following reasons, we affirm.

¶ 3    Defendant was charged by complaint with battery in that she, without legal justification, knowingly and intentionally made physical contact with Isabella de Alba by striking de Alba numerous times. See 720 ILCS 5/12-3(a)(2) (West 2022).

¶ 4    The charge arose from an incident at O'Hare International Airport ("O'Hare") involving defendant, defendant's son Christopher Hampton, defendant's niece Tembra Hicks, and de Alba and her family. The matter proceeded to simultaneous, separate, bench trials for defendant, Hampton, and Hicks.  Hampton and Hicks are not parties to this appeal.

¶ 5    De Alba testified that, on May 22, 2023, she was traveling with family members on a flight that landed at O'Hare. As the passengers disembarked, a verbal altercation occurred between de Alba's cousin, Yasmin Garcia, and defendant.

¶ 6    At the baggage claim, Hicks approached de Alba's group, screamed "Who is the one that called my tete a b***," and put her fingers in Garcia's face. Garcia did not respond. De Alba responded that she called Hicks's "tete a b***." Hicks and her group became aggressive and circled de Alba's group. Hampton put a camera "very close" to de Alba's face. De Alba reflexively "swiped" the camera down. Hampton then slapped de Alba's face. De Alba "flew back" and Hicks hit de Alba with a closed fist. Defendant approached. Hampton then picked up de Alba and "swung" her around while defendant grabbed her hair. De Alba and defendant fell to the ground, where defendant pulled de Alba's hair and struck her with both a closed fist and an open hand.  De Alba testified that, during the incident, she hit defendant in self-defense. De Alba denied throwing the first punch and felt "really attacked."  She also testified that defendant hit her first and hit her a "couple times."

¶ 7    The State published a video of the fight filmed by a bystander, which was admitted into evidence without objection. As the video played, de Alba identified Hicks and defendant in the footage. This video is included in the record on appeal and this court has viewed it.

¶ 8    The video depicts a baggage claim area. Hicks, wearing a yellow shirt, gestures to de Alba, who is dressed in black and is physically smaller. Other individuals, including defendant, who is wearing denim shorts, and Hampton, stand nearby. Hicks and defendant are positioned between de Alba and the exit to the baggage claim area. Defendant moves closer to the group and stands behind Hicks. Hicks removes her shoes.

¶ 9    Hampton holds something on a strap in front of his body. A noise is heard and then Hampton hits de Alba. At the same time, Hicks and another woman with red braids also strike de Alba. Defendant moves closer and reaches into the group of people. As the group separates, defendant and de Alba strike at each other with extended arms. At one point, Hampton and defendant flank de Alba, who is bent over at the waist. Hampton puts his arms around de Alba, lifts her, turns, and pushes her toward defendant, who grabs her. Defendant and de Alba grapple. Then defendant and another man push de Alba to the ground.

¶ 10    While on the ground with defendant on top of her, de Alba kicks at defendant, who hits and pushes her until de Alba's body rests against a baggage carousel. Defendant then stands. De Alba also stands and moves toward a group of people who are fighting on the ground. Defendant follows de Alba and leans over. At this point, a person holding a large stuffed animal enters the frame and blocks the view of de Alba and defendant.

¶ 11    During cross-examination, de Alba acknowledged calling defendant a "b***" after defendant called her a "b***." De Alba also acknowledged moving "in front" when Hicks placed

her fingers in Garcia's face, and that de Alba argued with Hicks and did not walk away. De Alba did not remember stating that Hicks was "about to get her s*** rocked." De Alba did not notice Hampton until he was in her "side vision." Then, she swiped at the camera and Hampton slapped her face. When Hampton hit de Alba, she "flew back." At the same time, Hicks struck de Alba in the "face region" with a closed fist. Hampton picked up de Alba and swung her around. Defendant also held de Alba by the hair and swung her around.

¶ 12    De Alba asserted that defendant "came at [her] first" and she defended herself by striking defendant. After de Alba struck defendant, Hampton picked de Alba up and swung her around while defendant grabbed her hair. When de Alba was on the ground, defendant "climbed on" and hit her. De Alba kicked defendant until defendant moved.

¶ 13    During redirect, de Alba testified that she had a "really bad feeling" when her group was surrounded at the baggage claim area. De Alba did not see Hampton's camera; rather, she saw "something coming at" her and "swatted it down." She denied initiating physical contact with defendant.

¶ 14    Garcia testified that, during an altercation on the plane between her younger cousin and another woman, defendant stood and said, "[s]he is grown, she can speak for herself." Garcia repeated that "same sentence" back to defendant. De Alba then stood and asked who was speaking. Defendant replied, "B***, who the f*** is talking to you." As Garcia's family passed defendant and another woman on the jetbridge, "she" stated, "Scaredy a** b***, you ain't going to do nothing." (As Garcia only referred to the speaker as "she," it is unclear whether defendant or the second woman made the statement.) The State then asked what happened after defendant called Garcia a "scaredy b***" and Garcia testified that her group said to "leave us the f*** alone" and

walked away. At the gate, defendant followed them and said that Garcia's "mom [was] a ho," while laughing. Garcia "sarcastically" responded "that really hurt my feelings," asked "are we in high school," and stated that defendant was "twice" her age. Garcia spoke to a security guard, but was "shrugged *** off."

¶ 15     Garcia and her group proceeded to the baggage claim. There, Hicks said, "Who in the f*** called my tete a b***." Hicks approached Garcia, asked if Garcia said it, and put her fingers in Garcia's face. Garcia did not say anything. Hicks continued to say, "how she wants to fight." During the argument, Hampton approached from the side and de Alba "swatted" the camera. Garcia saw Hicks throw a punch, so Garcia grabbed Hicks by the hair. Garcia saw defendant hit de Alba and de Alba kick defendant when defendant was on top of de Alba.

¶ 16     Defendant testified that de Alba "back shoulder bumped" one of defendant's nieces on the plane. The niece pushed de Alba back, which started the "initial argument." When Garcia entered the conversation, defendant interjected because de Alba was "grown" and could "talk for herself." As defendant and her niece exited the plane, words were exchanged because defendant was "trying to understand" the situation. Inside the terminal, the other group walked away.

¶ 17     At the baggage claim, defendant's group discussed what happened. Hicks then approached de Alba and asked who disrespected "her aunt." There was a "bunch of back and forth" and Hampton approached de Alba with a camera to record the events. Defendant heard the "sound of [de Alba] swiping the camera." Defendant then saw people "rushing into each other." Defendant testified that de Alba punched defendant in the face and they fought. They ended up on the ground, where defendant was kicked in the face.

¶ 18    Trial counsel then asked whether defendant tried to "walk away from the fight." Defendant answered yes. She explained that she was "on top" of de Alba, "trying to hold her down." She did not remember "throwing any punches" and "just" tried "to contain" de Alba. When defendant stood, de Alba moved toward the niece whom de Alba previously argued with, so defendant grabbed de Alba and pulled her back. Defendant then tried to gather her belongings. When defendant looked again, de Alba was "right back on top of" defendant's niece, so defendant grabbed de Alba again. Defendant acknowledged grabbing de Alba by the hair and pulling her.

¶ 19    During cross-examination, defendant denied being the first person to make physical contact with de Alba. The State then replayed the video and asked whether it depicted defendant "hitting her." Defendant asserted that she hit de Alba after defendant was hit. According to defendant, the video depicted de Alba making contact with defendant, which caused defendant to engage.

¶ 20    In finding defendant guilty of battery, the trial court found that an argument between the two families began on the plane and continued on the jetbridge, in the terminal, and at baggage claim. The court noted the video showed defendant and her family cut off de Alba's reasonable means of escape. The court further noted that, although defendant asserted self-defense, such a claim is not available to a person whose "perilous situation" arose out of her "aggressive conduct." The court noted that the video depicted (1) Hampton move closer to de Alba, and hit de Alba in the face after she swatted the camera away; (2) Hicks "almost simultaneously" raising a hand to hit de Alba, who went "flying back;" and (3) defendant "jump into the foray [*sic*]" shortly thereafter and reaches in to grab de Alba. The court concluded that defendant and her family members were the aggressors and "provoked" the incident.

¶ 21    The trial court sentenced defendant to six months of supervision.  Defendant filed a motion and amended motion to reconsider the guilty finding and/or for a new trial, alleging, relevant here, that the State did not disprove that she acted in self-defense. The trial court denied the motion.

¶ 22    On appeal, defendant contends that the trial court erred in finding her guilty of battery because the State failed to disprove her self-defense claim beyond a reasonable doubt.

¶ 23    When considering a challenge to the sufficiency of the evidence, a reviewing court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original and internal quotation marks omitted.) *People v. Gray*, 2024 IL 127815, ¶ 20. It is the responsibility of the trier of fact to weigh, resolve conflicts in, and draw reasonable inferences from, the testimony and other evidence at trial. *People v. Harris*, 2018 IL 121932, ¶ 26. This court does not retry a defendant. *People v. Eubanks*, 2019 IL 123525, ¶ 95. A defendant's conviction will be reversed only if the evidence is so unreasonable, improbable, or unsatisfactory that a reasonable doubt of her guilt remains. *Harris*, 2018 IL 121932, ¶ 26.

¶ 24    As charged, a person commits battery when she, without legal justification, knowingly and intentionally makes physical contact with the victim by striking the victim. See 720 ILCS 5/12-3(a)(2) (West 2022). Defendant does not dispute that the State established the elements of the offense beyond a reasonable doubt. Rather, she contends that the trial court erred in rejecting her self-defense claim given that she did not initiate the confrontation with de Alba and the chaotic nature of the events.

¶ 25    To establish self-defense, a defendant must demonstrate that (1) unlawful force was threatened against her, (2) she was not the initial aggressor, (3) the danger of harm was imminent,

(4) the use of force was necessary, (5) she actually and subjectively believed a danger existed that required the use of force, and (6) her beliefs were objectively reasonable. *People v. Gray*, 2017 IL 120958, ¶ 50; see also *People v. Redmond*, 2025 IL App (1st) 231795, ¶ 67. Once a defendant raises the affirmative defense of self-defense, "the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense." *People v. Lee*, 213 Ill. 2d 218, 224-25 (2004); see also *People v. Wilson*, 2025 IL App (1st) 230027, ¶ 60 (a slight amount of evidence is sufficient to raise a self-defense claim). If the State negates any element of a defendant's claim of self-defense, it fails. *People v. Williams*, 2025 IL App (1st) 240582, ¶ 46. A trier of fact need not accept a defendant's contention she acted in self-defense; it is a question of fact, and the court may consider the probability or improbability of the defendant's account, the circumstances surrounding the offense, and other witnesses' testimony. *People v. Young*, 347 Ill. App. 3d 909, 920 (2004).

¶ 26    Viewed in the light most favorable to the State, there was sufficient evidence for a rational trier of fact to find that defendant committed a battery and was not acting in self-defense because she was the aggressor. De Alba testified that, after she "swiped" at the camera Hampton held, Hampton and Hicks struck her. Then defendant approached and Hampton picked de Alba up and "swung" her around while defendant grabbed her hair. Defendant hit de Alba numerous times and pulled her hair while they were on the ground. De Alba denied initiating physical contact with defendant.  She testified that defendant "came at [her] first" and pulled her hair and she defended herself by striking defendant. Additionally, the evidence showed no unlawful force was threatened against defendant and there was no danger of imminent harm when she first made contact with de Alba.

¶ 27    The video of the incident depicted defendant and her family members positioned between de Alba and the exit to the baggage claim area. During the interaction between Hicks and de Alba, defendant moved closer, eventually standing behind Hicks. After Hicks struck de Alba, defendant reached into the group. As the group separated, defendant and de Alba struck each other with extended arms. The footage further depicted Hampton and defendant flank de Alba, who was bent over at the waist. Hampton grabbed de Alba, lifted her, turned, and pushed her toward defendant, who grabbed her. As defendant and de Alba grappled, defendant and another man pushed de Alba to the ground.  Defendant then climbed on top of de Alba and hit her several times. After defendant and de Alba separated, defendant followed her. This evidence, and the reasonable inferences therefrom, was sufficient for the trier of fact to find that defendant was the aggressor. See *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009) ("[T]he testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant.").

¶ 28    Defendant, however, contends that, after the verbal altercation was resolved, de Alba "turned things physical" by "slapping" Hampton's camera. Defendant argues that she then "reached" into the group and tried to "contain" de Alba. De Alba, however, testified that she swiped the camera and that Hampton responded by striking her. Thereafter, Hicks and defendant struck her. It was for the trial court, as trier of fact, "to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts." *Gray*, 2017 IL 120958, ¶ 35.

¶ 29    Defendant also testified that she heard the "sound of [de Alba] swiping the camera" and saw people "rushing into each other." At this point, according to defendant, de Alba punched defendant in the face and they ended up on the ground. Although defendant testified that de Alba struck defendant first, de Alba testified that it was defendant who "came at [her] first" and the

video depicted defendant reaching into the group. The trial court was not "required to accept the defendant's version of the facts." See *People v. Jacobs*, 2016 IL App (1st) 133881, ¶ 53. Once the trial court found defendant's version of events, including that de Alba struck defendant first, to be incredible, the court similarly discounted defendant's testimony that she acted in self-defense. See *People v. Perez*, 100 Ill. App. 3d 901, 905 (1981) (a trier of fact "is not required to accept as true the defendant's testimony concerning self-defense").

¶ 30    While defendant argues that she only reached into the group to contain de Alba, a trier of fact need not disregard inferences which flow normally from the evidence or seek all possible explanations consistent with innocence and raise them to the level of reasonable doubt. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60. Considering the two versions of events presented, the trial court did not find defendant's version credible as evidenced by its guilty finding. See *People v. Bradford*, 2016 IL 118674, ¶ 12 ("It is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts.").

¶ 31    In the case at bar, the trial court found the evidence that defendant was the aggressor to be credible and rejected testimony to the contrary. This court will not retry a defendant and overturn the trial court's credibility determinations on appeal simply because the defendant claims a witness was incredible. *Lee*, 213 Ill. 2d at 225 (in deciding a self-defense claim, the trier of fact assesses the credibility of the witnesses and resolves conflicts or inconsistencies in the evidence). Accordingly, viewing the evidence in the light most favorable to the State, we cannot say that no rational trier of fact could have concluded that defendant struck de Alba and did not act in self-defense. We reverse a defendant's conviction only when the evidence is so unreasonable,

improbable, or unsatisfactory that reasonable doubt of her guilt remains (*Harris*, 2018 IL 121932, ¶ 26). This is not one of those cases. Defendant's conviction for battery is therefore affirmed.

¶ 32   For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 33   Affirmed.