**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230118-U

Order filed August 8, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-23-0118 |
| v. | ) ) | Circuit No. 22-CF-1616 |
| ROMEO A. JONES, | ) ) | Honorable Daniel P. Guerin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices Peterson and Davenport concurred in the judgment.

**ORDER**

¶ 1     *Held*:  (1) The State proved beyond a reasonable doubt that defendant did not reasonably believe his actions were necessary to protect himself or his property. (2) The circuit court did not err in determining defendant was fit to stand trial.

¶ 2     Defendant, Romeo A. Jones, appeals his convictions for aggravated battery, arguing that the State failed to prove beyond a reasonable doubt that defendant did not reasonably believe his actions were necessary to protect himself and his property. Further, defendant argues that the

Du Page County circuit court erred in finding him fit to stand trial because it did not make an independent inquiry during the fitness hearing. We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4        Defendant was charged, *inter alia*, with two counts of aggravated battery (720 ILCS 5/12-3.05(d)(4)(i), (h) (West 2022)). These charges alleged that on August 4, 2022, defendant knowingly and without legal justification, caused bodily harm or made contact of an insulting and provoking nature with Officer John Kozuch while he was performing his official duties as a security officer for Glen Oaks hospital.

¶ 5        Between August and November 2022, defendant made two unsuccessful requests to be released on his own recognizance pending trial. On November 3, 2022, defendant again requested to be released from the county jail, claiming for the first time that he was being harassed and suffering greatly. When asked to elaborate, defendant informed the court that he was being harassed by spirits, explaining: "there's something called a game of life. Apparently, it's a spirit game that they play in elsewhere. People are making money off of me being cut open and stuff. People can see me on the outside that ain't supposed to." After hearing this, the court found a *bona fide* doubt as to defendant's fitness and ordered an evaluation. Defendant reiterated that he was asking to be released from jail. The court explained that he was not going to release him from custody "because some spirits [were] cutting him open." Defendant then explained that the people were, in fact, alive and he had been tortured for months by the situation; however, he "fe[lt] a lot better, because [he] was receiving help." Defendant went on to explain that he could not bond out of jail because his state identification card was missing, and he had a hold from another county for a missed court date. The court continued the case for a fitness evaluation.

2

¶ 6        On November 28, 2022, the court held a fitness hearing. Prior to the hearing, defendant renewed his request for release from jail arguing that he had served too long on the charge and needed to begin working. He explained to the court that he understood he had failed to appear for cases in the past but "stay[ed] close by" and would make all his court appearances. The court informed defendant that it needed to address his fitness before it could proceed with any other matters.

¶ 7        The fitness report indicated that defendant did not spontaneously report any auditory or visual hallucinations and, when directly asked, denied experiencing hallucinations or other psychotic symptoms. Medical records from defendant's current incarceration in jail reflected that defendant had previously made peculiar statements. In September 2022, defendant became agitated and demanded to be released immediately. The next day, defendant stated " 'I was just trippin', I'm fine. Can I get my clothes back?' " The day after that, defendant explained that " '[his] cell kept flooding, [he] wasn't suicidal.' " The jail psychologist noted that defendant received a " 'housing change as [a] secondary gain for statements made.' "

¶ 8        Two days prior to the court finding a *bona fide* doubt, on November 1, 2022, defendant was examined when he requested that the jail release him, stating that he was being harassed and his reports had been ignored by the correctional officers. Defendant did not specify who was harassing him. He reported worries about his legal case and denied any other significant psychiatric symptoms. Defendant indicated that he frequently invented answers when questioned. The medical report concluded that no psychotic symptoms were present. On November 9, 2022, during a follow-up psychiatric appointment, defendant made a request to be transferred to general population and initially refused to cooperate with the ordered evaluation because the examiner could not move him.

¶ 9        The report stated that during his examination, defendant was alert, oriented, and coherent. He was able to accurately describe the nature of his charges, the roles of the parties, and various parts of the process (*i.e.* discovery, plea bargaining, etc.). Defendant did not express any strange or delusional ideations. The psychiatrist ultimately found defendant fit to stand trial. She explained that, though defendant had made prior idiosyncratic statements, he had exhibited no incidents of psychosis or signs of any significant psychiatric condition since his incarceration. Nor had he exhibited any signs of mental illness that might impede his fitness.

¶ 10        The court indicated that it had read the report. The court highlighted that defendant was "aware of the charges pending against him, he possess[ed] an understanding of the nature and purpose of legal proceedings, he [was] familiar with the roles of various courtroom personnel, and [was] capable of assisting in his defense." The parties stipulated that, if called, the psychiatrist would testify consistent with her written report. The court found defendant fit to stand trial "[b]ased on the stipulation of the parties and [its] own review of the report[.]" After the conclusion of the fitness hearing, the court heard defendant's renewed request for release from custody. The record reflects that defendant's conduct during the entirety of the November 28 proceedings was appropriate and responsive. The case proceeded to a bench trial on January 11, 2023.

¶ 11        Kozuch testified that on August 4, 2022, he was employed as a private security officer at Glen Oaks hospital. On that day, he had been informed that a discharged patient was refusing to leave the hospital. Kozuch identified defendant as the discharged patient. Kozuch explained that he responded to defendant's room and informed him that he needed to leave. At this time, defendant was calm and compliant. Kozuch walked defendant out the hospital doors without issue. Thirty minutes later, Kozuch entered the emergency room lobby and discovered defendant

4

at the registration desk having a discussion with hospital staff and three other security officers. Ultimately, defendant was informed by several nurses that he needed to leave the hospital. He did not comply with their request. Kozuch indicated that at some point, police arrived, and he was asked by his supervisor to stay at the registration desk. Kozuch approached the desk and heard defendant arguing with the nurses. As Kozuch was leaning against the desk, defendant got very close to Kozuch, "pointed his finger in [his] face and he said, You guys just want to fight."

¶ 12      Defendant had a backpack on the ground in front of him as he stood at the desk. Kozuch indicated that defendant "didn't say anything to anybody, turned around and walked towards the front doors." Kozuch noticed that defendant had left his backpack. He did not want defendant to return once he left, so Kozuch picked up the backpack and began bringing it to defendant. Kozuch indicated that defendant turned around and "came back in like a raging bull." Defendant appeared to be "pretty mad at that point." Kozuch initially believed that defendant was going to charge at him and knock him over. He handed defendant the backpack. Defendant "pushed [him] with the bag, then he pushed [him] *** with his hands." Kozuch felt threatened and intimidated. He swung at defendant hoping to put space between them and get away from defendant. Defendant grabbed Kozuch by the collar and pushed him "like a bulldozer" into a set of chairs. Kozuch was struck in the ribs, back, and hip by the chair arms. His head hit the wall and a metal railing cut his arm from wrist to elbow. Kozuch testified that he sustained a concussion and received 12 stitches in his arm as a result. He stated that he "was out of it." Kozuch was on his knees and used the arm of a chair to stand. He had no control over his legs.

¶ 13      Defendant was standing to Kozuch's immediate left. The backpack was in the middle of the lobby. Kozuch did not touch the backpack after initially bringing it to defendant. He testified that defendant never moved to retrieve the backpack and remained standing in close proximity to

5

Kozuch. When he stood, Kozuch indicated that he felt dizzy and disoriented. Defendant grabbed him and pushed him into a partition wall on the other side of the lobby. Kozuch's head struck the wall and he fell to the floor.

¶ 14 Photographs of Kozuch's injuries, video surveillance, and cell phone video of the altercation were admitted into evidence. The surveillance videos depicted defendant at the front desk while Kozuch was leaning against the desk speaking with defendant. Defendant moved close to him and put his hand in Kozuch's face. Eventually, defendant walked away from the desk. Kozuch noticed the backpack, picked it up, and walked toward defendant. Defendant turned and walked quickly and aggressively toward Kozuch. Kozuch thrust the backpack in between himself and defendant. Defendant shoved Kozuch. Immediately thereafter, Kozuch swung and pushed back at defendant. Defendant pushed Kozuch into a row of chairs on one side of the lobby. Defendant stood over Kozuch as he attempted to stand. Once on his feet, Kozuch was visibly swaying and unsteady. Kozuch turned, saw defendant right next to him, and brought up his left arm in a blocking motion. Defendant grabbed Kozuch and pushed him into a partition wall on the other side of the lobby. The cell phone video recorded audio of the encounter. Defendant can be heard telling Kozuch "I will fuck you up" as he stood over him.

¶ 15 Registration department manager Dulce Pani testified that on August 4, 2022, she was working at the registration desk at Glen Oaks hospital. Defendant approached her asking to use the triage room to change. Initially, defendant was allowed to use the room. After being asked to leave the triage room, defendant attempted to be readmitted to the hospital. Defendant engaged in a conversation with a nurse about why he could not be seen. Pani indicated that defendant was polite when he spoke with her but became loud and upset with the nurse and the security officers, prompting her to call the police. When the police arrived, security officers exited the hospital to

6

meet with them, leaving only Kozuch at the front desk with Pani and defendant. Pani heard Kozuch ask defendant to "cooperate and leave" to which defendant repeatedly replied: "Shut up. I'm not talking to you."

¶ 16        Defendant had a backpack in his possession that he set on the floor when he was speaking with Pani. Ultimately, defendant walked away from the front desk. He did not take his backpack with him. Pani observed Kozuch pick up the backpack and start walking after defendant. When defendant "turned around and saw [Kozuch] with the backpack on his hand, he just lost it." Pani indicated that defendant quickly approached Kozuch and was very upset. Defendant attempted to take the backpack from Kozuch and became physical with him. Pani did not recall seeing Kozuch strike defendant. Defendant pushed Kozuch, and Kozuch fell after striking the chairs and wall. Pani indicated that defendant waited for Kozuch to stand and pushed him again, into a partition wall and chairs on the other side of the lobby. Both Kozuch and defendant ended up on the ground. At this point, police officers rushed in and arrested defendant. Pani observed Kozuch bleeding from his hand and the back of his head.

¶ 17        Officer Dennis Stachura of the Glendale Heights Police Department testified that on August 4, 2022, he had been dispatched to Glen Oaks hospital in response to a discharged patient, who he identified as defendant, that would not leave. While speaking with security officers outside the hospital, Stachura was alerted that a fight had begun in the lobby. As he entered the lobby, he observed defendant pushing Kozuch. Stachura placed defendant under arrest for battery. As they were walking toward the squad car, defendant stated something to the effect of "I told him not to touch my fucking bag." Defendant did not complain of any injuries, nor did Stachura observe any injuries. A photograph of defendant during booking was admitted into evidence and did not depict any injuries to defendant's arms, palms, face, or neck.

7

¶ 18    Defendant testified that on August 4, 2022, he walked to Glen Oaks hospital, was seen by medical staff, and discharged. After his discharge, defendant asked to use a private room to "get [him]self together." Once in the room, he noticed he had a small cut on his right thigh. As he was about to bandage it, three security officers aggressively informed defendant that "they had to use the room" and defendant needed to leave. Defendant exited the room as requested and approached the front desk to try to be readmitted. Defendant testified that as the woman at the front desk was entering his information, Kozuch was leaning against the desk, speaking with him. Kozuch was giving off "an irritating type of energy like he wanted to *** fight [him]." Defendant indicated that he was growing irritated and attempted to avoid Kozuch. Kozuch kept interrupting defendant, saying: " ' We don't want you in here. You have to leave, sir.' " Defendant testified that the hospital called the police to remove him from the hospital. Defendant went toward the exit to speak with police and explain the situation. Defendant turned around before reaching the door and Kozuch "grabbed the book bag and he was giving it to [defendant]."

¶ 19    Defendant could not recall if Kozuch shoved the backpack at him but indicated that Kozuch was holding onto the backpack as defendant grabbed it. At that point, a physical altercation began. Defendant pushed Kozuch and took the backpack. Kozuch then began "swinging" at him. Defendant pushed Kozuch off him, and Kozuch hit the wall and chairs. Defendant testified that he approached Kozuch to make sure he was okay and indicated that he intended to pick Kozuch up if he fell again. As defendant was standing there, Kozuch "turned around trying to fight [him] again." Defendant responded by pushing Kozuch again but used "too much force; so he hit the little portable wall and hit the ground." Defendant was then tackled by police officers and subsequently arrested. Defendant testified that he pushed Kozuch because he

was just trying to defend himself. Defendant could not recall if Kozuch's demeanor was aggressive or cordial as he brought the backpack to him, but Kozuch was bringing it to him because he wanted him to leave. Defendant testified that Kozuch swung at him after defendant made "the first contact" and pushed him away. Defendant indicated that Kozuch attacked him a second time after he was pushed into the wall and chairs. Kozuch stood up, turned around, saw defendant behind him, and "[threw] punches at [him]."

¶ 20    On cross-examination, defendant indicated that Kozuch was not one of the security officers that had been aggressive with him in the private room. Defendant admitted to getting close to Kozuch and putting his hand in his face while they were standing at the front desk, asking Kozuch to leave him alone because he was growing frustrated. Defendant testified that Kozuch did not follow him as he left to speak with the officers until he was close to the exit. At that time, Kozuch picked up his backpack and walked toward him. Defendant turned around and saw Kozuch approaching with his backpack. Defendant believed that Kozuch was bringing it to him. Kozuch handed him the backpack and he took it. Defendant pushed Kozuch while he was holding onto the backpack. A struggle ensued and defendant pushed Kozuch into the wall and he fell to his knees. At that time, defendant's backpack was sitting in the middle of the lobby. Defendant made no move to retrieve the backpack or leave the lobby. Defendant repeated that he stood over Kozuch, intending to help him up and explained that "[t]he only reason it kind of seemed like [he] was going to do something else to [Kozuch] is because [they] were so close together." However, defendant admitted that he told Kozuch "I'll fuck you up" as he stood over him.

¶ 21    The court found defendant guilty of both counts of aggravated battery. Defendant's motion for a new trial was denied. At a sentencing hearing, defense counsel highlighted

defendant's cooperative demeanor throughout the proceedings and respect for the court process, including his cooperation with the fitness evaluation and his calm demeanor during his trial testimony. Specifically, counsel noted that defendant never became argumentative or combative with the State, answered questions to the best of his ability, and took the time to carefully respond. The court noted that it had ordered defendant be evaluated for fitness and he had been found fit to stand trial. Defendant was sentenced to three years' imprisonment. Defendant appealed.

¶ 22                                                    II. ANALYSIS

¶ 23         On appeal, defendant argues that the evidence was insufficient to prove beyond a reasonable doubt that he did not act in self-defense or defense of property because the evidence showed that defendant only pushed Kozuch after he was denied his backpack and Kozuch struck him in the face. Further, defendant argues that the court erred in failing to make an independent inquiry into his fitness at a hearing, relying instead on the unchallenged observations recorded in the report.

¶ 24                              A. Self-Defense and Defense of Property

¶ 25         When a defendant presents evidence supporting the affirmative defenses of self-defense and defense of property, "the State [is] required to disprove the affirmative defense[s] in addition to proving the elements of the charged offense." *People v. Bausch*, 2019 IL App (3d) 170001, ¶ 22. "The relevant standard of review is whether, after considering the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that defendant did not act in self-defense" or defense of property. *People v. Lee*, 213 Ill. 2d 218, 225 (2004). The trier of fact is responsible for determining the credibility of the

witnesses, the weight to be afforded their testimony and any reasonable inferences to be drawn from the evidence. *People v. Gray*, 2017 IL 120958, ¶ 35.

¶ 26        The elements of self-defense are that: (1) a person was threatened with unlawful force; (2) the person threatened was not the aggressor; (3) the danger of harm was imminent; (4) the use of force was necessary; (5) the threatened person "actually and subjectively believed a danger existed that required the use of the force" which was applied; and (6) this belief was objectively reasonable. *Lee*, 213 Ill. 2d at 225. If the State negates any element of self-defense, the claim fails. *Id.*

¶ 27        Here, the evidence establishes that defendant was the initial aggressor. Defendant testified that he was irritated and frustrated with Kozuch. Defendant moved close to him and put his hand in Kozuch's face. The video establishes that when defendant turned around and observed Kozuch following him with his backpack, he walked back in a quick, aggressive manner. Kozuch thrust the backpack in between them and defendant shoved him. Both defendant's testimony and the surveillance video establish that defendant made the first contact. This coupled with defendant looming over Kozuch and threatening him clearly demonstrated that defendant was not acting in self-defense when he shoved Kozuch into two separate walls.

¶ 28        Turning to defense of property, in relevant part, "[a] person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to prevent or terminate such other's trespass on or other tortious or criminal interference with *** personal property, lawfully in his possession ***." 720 ILCS 5/7-3(a) (West 2022). The evidence, including defendant's own testimony, establishes that Kozuch was attempting to give defendant his backpack. Kozuch possessed the backpack for mere seconds without any intention to deprive defendant of his possessions or interfere with them in any way. Even if Kozuch held

11

onto the backpack instead of releasing it immediately as defendant testified, at no time after pushing Kozuch away did defendant attempt to retrieve his property. Defendant could easily have retrieved his property and attempted to leave the hospital. Instead, he continued to loom over Kozuch, leaving the backpack in the middle of the lobby. Accordingly, the evidence provided by the State proved beyond a reasonable doubt that defendant did not act in self-defense or defense of his property.

¶ 29                                B. Fitness Determination

¶ 30        Defendant next argues that his due process rights were violated when he received an inadequate fitness hearing. Defendant acknowledges that he forfeited this issue but asks this court to review it under the plain error doctrine. The plain error doctrine allows a reviewing court to remedy a "clear or obvious error" when: (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Defendant contends that the court's failure to make an independent determination of his fitness at a hearing is reversible under the second prong of the plain error analysis. Initially, we must determine whether a clear or obvious error occurred. *People v. Eppinger*, 2013 IL 114121, ¶ 19.

¶ 31        A criminal defendant is presumed fit to stand trial. 725 ILCS 5/104-10 (West 2022). "A defendant is unfit if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." *Id.* When, as here, the court finds a *bona fide* doubt as to defendant's fitness to stand trial, a fitness hearing is mandatory. *People v. Washington*, 2016 IL App (1st) 131198, ¶ 72.

12

¶ 32	Generally, due process is satisfied, and the court's finding of fitness is proper when it is based not only on stipulation, but also the court's own review of a psychological report and observations of defendant. *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 30. The court must take an active role in determining whether a defendant is fit to stand trial and the record must affirmatively demonstrate that the court exercised its discretion and judgment in making its finding. *Id.* ¶ 29. The court "may consider an expert's stipulated testimony to assess a defendant's fitness but may not rely solely on the parties' stipulation to an expert's *conclusion* that the defendant is fit." (Emphasis in original.) *Id.* ¶ 30. Fitness determinations have been held proper when the stipulation considers the expert's opinion testimony rather than just the conclusion of fitness. See *People v. Lewis*, 103 Ill. 2d 111, 116 (1984).

¶ 33	Here, the parties stipulated that the psychiatrist who performed defendant's fitness evaluation would testify consistently with her written report. The court reviewed the report and highlighted portions that it believed to be important, notably, defendant's lack of signs or symptoms of any mental illness that would preclude his fitness to stand trial and his ability to understand the charges against him and the nature of the proceedings. The court had the opportunity to observe defendant during the hearing. It engaged in a responsive and nonhostile discussion with him prior to and after the fitness hearing. The record does not indicate that defendant made any concerning statements or engaged in any behavior that would have required any further inquiry from the court. Accordingly, the court's determination of defendant's fitness was proper. See *People v. Mounson*, 185 Ill. App. 3d 31, 37 (1989); *People v. Brooks*, 2023 IL App (3d) 220005-U, ¶ 11.

¶ 34	                                    III. CONCLUSION

¶ 35	The judgment of the circuit court of Du Page County is affirmed.

¶ 36        Affirmed.