NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250630-U

NO. 4-25-0630

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 18, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Lee County |
| COREY M. DAVENPORT, | ) | No. 23CF264 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jacquelyn D. Ackert, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Doherty and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding (1) defendant was not denied effective assistance of counsel when his attorney failed to proffer a self-defense jury instruction; (2) defendant's prior convictions for domestic battery were properly admitted as propensity evidence; and (3) no clear or obvious error occurred during the State's closing arguments to warrant reversal under either the plain error doctrine or a theory of ineffective assistance of counsel.

¶ 2    After a jury trial, defendant, Corey M. Davenport, was found guilty of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2022)). On appeal, defendant argues (1) he was denied effective assistance of counsel when his counsel failed to proffer a self-defense jury instruction, (2) the trial court abused its discretion in permitting the State to admit his prior domestic battery convictions as propensity evidence, and (3) he was denied a fair trial when the State disparaged defense counsel's integrity, appealed to the emotions of the jury, and "painted" defendant as a " 'serial domestic batterer.' " Defendant argues further that the cumulative effect of these errors

requires reversal. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                         A. Charges and Pretrial Proceedings

¶ 5          On November 29, 2023, defendant was charged by information with domestic battery (*id.*), alleging he made physical contact of an insulting or provoking nature with Mallory Guerrero, a family or household member, by placing his hands on or about her neck. The charge was a Class 4 felony because defendant had two prior convictions for domestic battery. See *id.* § 12-3.2(b). On November 22, 2024, the information was amended to add a second count of domestic battery based on the same allegations, charged as a Class A misdemeanor (*id.*).

¶ 6          The State filed a pretrial motion seeking to present evidence of defendant's prior domestic violence offenses pursuant to section 115-7.4 of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/115-7.4 (West 2024)). Defendant's prior convictions occurred in West Virginia, which defined domestic battery as follows: "Any person who unlawfully and intentionally makes physical contact of an insulting or provoking nature with his or her family or household member, or unlawfully and intentionally causes physical harm to his or her family or household member, is guilty of a misdemeanor." W. Va. Code § 61-2-28(a) (2017). The West Virginia Code also provided for an increased fine and minimum 60-day sentence for a second offense of domestic battery. *Id.* § 61-2-28(c). Defense counsel objected, arguing the admission of the prior convictions would deprive defendant of a fair trial because the jury might presume him guilty in this case based on those convictions. The trial court granted the State's motion, and the following were deemed admissible under the Procedure Code: (1) the judgment order from the magistrate court of Ohio County, West Virginia, in case No. 15-M-1021, defendant's conviction for domestic battery against Melinda Straub, and (2) the judgment

- 2 -

order from the magistrate court in Ohio County, West Virgina, in case No. 17-M35M-01517, defendant's domestic battery, second offense, conviction against Sierra Long. In ruling on the motion, the court found:

> "This is clearly what the legislature intended when they passed this statute, finding it important in domestic violence cases that this be allowed. The Court has to consider the factual similarity and the probative value versus any prejudicial effect. The Court does find there is factual similarity. The Court does find that the probative value does outweigh any prejudicial effect and allows those two convictions."

¶ 7    In February 2024, defense counsel filed a written notice that defendant may pursue the affirmative defense of self-defense at trial. In the months that followed, additional pretrial proceedings unrelated to this appeal were held, including proceedings regarding defendant's fitness and ongoing plea negotiations. Defendant's jury trial commenced on August 6, 2025.

¶ 8                                    B. Trial

¶ 9    The State called Guerrero to testify. She stated she was in a dating relationship with defendant for four or five years and they have one child. At one point, she and defendant had ended their relationship, but they got back together in 2023, when she learned she was pregnant with their son. Guerrero lived in an apartment in Dixon, Illinois, with her son, defendant, and another roommate. On November 28, 2023, Guerrero spent the day Christmas shopping with her parents and her son, who was two months old at the time. When she returned to the apartment, she encountered defendant standing outside "star gazing" and drinking beer. They entered the apartment and defendant attended to the child while Guerrero prepared to show

defendant the gifts she had purchased. She recalled she was excited for their child's first Christmas. Guerrero noticed beer had been spilled on some of the packages, and she became "a little upset," began to cry, and told defendant she would not have asked him to carry the presents if she had known he was drunk. Defendant and Guerrero began yelling at one another, and the child began to cry. Guerrero asked defendant to hand their son to her multiple times, but he refused and continued yelling at her. Guerrero called her mother for advice. Defendant took the child to the changing table, but Guerrero stated he was "still upset and saying things to [her]." Guerrero asked defendant to step aside and allow her to change their son's diaper to get him ready for bed. Defendant did so, appeared to "cool off," and left the room. Guerrero decided to pack some items so she and her child could stay at her sister's residence for the night.

¶ 10        As Guerrero left the apartment, she was carrying an infant car seat with her son secured inside, only to realize she did not have her car keys. Guerrero decided to leave the car seat in the hallway, which was a common area for the apartment building, while she went back to retrieve her keys. She explained it was her "mother's intuition" that it was the best place for him. Guerrero was locked out of the apartment, so she knocked on the door, and defendant let her back inside. Guerrero testified her keys were in her bedroom, about 20 feet inside the apartment. By the time she retrieved her keys, defendant had brought their son in his car seat back inside the apartment. When Guerrero picked up the car seat and tried to leave the apartment, defendant began yelling at her again, followed her into the hallway, and grabbed ahold of the car seat to take it and the child away from her. Guerrero described a "tug-of-war" over the car seat, explaining she was trying to keep it still, and they eventually "wrestled the car seat kind of down to the ground." Guerrero was shielding the car seat from defendant, and defendant grabbed the back of her neck and pinned her. She explained, "So he kind of had pinned me down forward on

top of my knee that was up to kind of push me off the car seat. From there he was able to pull the car seat from me and eventually out of my hands."

¶ 11         Defendant took her son back into the apartment. At this time, Guerrero decided to remove herself from the situation, went outside, and called the police. She learned the police were already en route because other people in the apartment building had heard the altercation and called 911. Guerrero testified her mother remained connected on a phone call during part of the altercation, but the phone disconnected at some point, and she called the police. Guerrero waited outside the apartment building for the police. After the police arrived, Guerrero became aware she had a "scratch mark" on her neck, but she did not have any other soreness. Two photographs showing an abrasion on Guerrero's neck were admitted into evidence.

¶ 12         Video from security cameras in the hallway of the apartment building captured the altercation that evening. The videos, which have no audio, were played for the jury. The videos show two vantage points of the vestibule of the apartment building, with mailboxes along one wall and two doorways on either end, one leading to the hallway for access to the apartments and another to exit the building. Guerrero, holding the car seat with her child inside, is seen walking from the hallway into the vestibule and toward the exit door. Defendant follows behind. Defendant shoves Guerrero and grabs ahold of her coat with his left hand while simultaneously making a fist with his right hand and raising it above his head. Defendant then releases Guerrero's coat, lowers his hand, and grabs ahold of the car seat handle as Guerrero reaches the exit door to prevent her from leaving. Defendant and Guerrero are seen struggling over the car seat, with defendant prying Guerrero's hand off the handle numerous times and Guerrero grabbing the handle again each time. During the struggle, Guerrero turns to place her body between defendant and the car seat, lowers the car seat to the floor, and bends over it while

crouching on one knee. After approximately 48 seconds of this struggle, defendant hits Guerrero on the side of her head, pushes her head down to the floor, and holds her head to the floor by the side or back of her neck with one hand for approximately 10 seconds. Defendant simultaneously continues to attempt to pry Guerrero's hands off the car seat with his other hand. Defendant releases Guerrero's neck, picks up the car seat, and continues to try to pry Guerrero's hands away from the handle for several seconds. Defendant manages to yank the car seat away from Guerrero, who is still on her knees, attempting to regain control of the car seat. Guerrero loses her grip on the handle and falls face-first to the floor. Defendant exits the vestibule and enters the hallway that leads to the apartments. Guerrero is seen getting to her feet and making a call on her cell phone.

¶ 13　　　　　Officer Tyler Henson of the Dixon Police Department testified he was dispatched to Guerrero's apartment at approximately 8:20 p.m. on November 28, 2023, in response to two 911 calls about a domestic disturbance in progress, as well as a frantic female on the phone with 911 upon arrival. Officer Henson testified another officer arrived on scene first and was speaking with Guerrero and he observed defendant exiting the apartment building, carrying the child in the car seat. Officer Henson approached defendant and suggested they enter the apartment to talk and to get the child out of the cold weather. Defendant reported he had been in a verbal altercation with Guerrero because he had spilled beer on the bags from her shopping trip. Officer Henson observed defendant had an odor of alcohol and appeared to be under the influence of alcohol. Defendant acknowledged to Officer Henson he had consumed five beers in the previous four hours. Defendant told Officer Henson that Guerrero attempted to take their child away to stay at her parents' house for the night and pushed him, but he regained control of his son and returned to the apartment. Defendant also told Officer Henson he did not want Guerrero to take

- 6 -

their son to her sister's house because the sister's boyfriend was a "child predator" and watched "child pornography." Officer Henson suggested they call paramedics to the scene to check on the child due to his size and the nature of the incident. Paramedics arrived and found the child to be unharmed. Defendant was arrested for domestic battery that evening. Defendant was compliant but stated Guerrero should be the one arrested and "the officers on scene would get what [they] deserved."

¶ 14       The State presented for admission into evidence certified copies of defendant's two prior convictions for domestic battery in West Virginia (case Nos. 15-M-1021 and 17-M35-M-01517). The exhibits were admitted over defendant's ongoing objection.

¶ 15       The State rested, and defendant presented no evidence.

¶ 16       During closing argument, the State argued the evidence was "very clear" and "largely speaks for itself," noting Guerrero gave credible and straightforward testimony and the incident was captured on video surveillance. In response, defense counsel reminded the jury the State had the burden of proving defendant's guilt beyond a reasonable doubt. Referring to the State's "power," defense counsel noted the State entered into evidence convictions for domestic battery "that have nothing to do with this case, from years before [defendant] ever met [Guerrero]." He argued, "What are they doing? Are they trying to inflame you; to show you prejudice, pattern; it's not the same parties[?] So if they're going to do that, let's make them bring all of the evidence." Defense counsel then noted the State failed to call any other officers who responded to the scene, the 911 callers, or Guerrero's mother. Defense counsel acknowledged this case involved "regrettable contact and conduct between two people," but there was no evidence of "specific intent."

¶ 17       In rebuttal, the State argued:

"If you find beyond a reasonable doubt that this—what you saw with your own eyes, is insulting or provoking contact, and if you believe the testimony of the witness, who was up there, who was sworn to tell the truth, which she said, yeah, he's the father of my child, and we're in this dating relationship; we lived together at this apartment; if you find all of those things and you find this to be insulting or provoking—meaning a man on top of a woman beating her with his fists and struggling with her over this car seat, if you find those things, then you have to find him guilty beyond a reasonable doubt. You have to return a verdict of guilty.

All of the smoke and mirrors and the deception and the where was this person and that person and all that other stuff does not matter. If this was the only evidence you saw, if this alone were admitted into evidence—you in a vacuum woke up this morning and said you were going to see this video, what would you think of it?"

With regard to defendant's prior convictions, the State told the jury, "[Y]ou are permitted to infer the facts that the Defendant has committed domestic violence against partners in the past; that he did it before, ergo, he did it now." The State argued further, "The Defendant is a serial domestic batterer. This is how he treats women."

¶ 18 On May 20, 2025, the jury found defendant guilty of domestic battery. Defense counsel filed a motion for a new trial, alleging the trial court erred in admitting evidence of the prior domestic battery convictions and the State "unfairly categorized the Defendant's history and defense during the trial and closing arguments causing prejudice." Defendant's motion was denied, and he was sentenced to 18 months in prison. Defendant's motion to reconsider his

sentence was also denied.

¶ 19 This appeal followed.

¶ 20 II. ANALYSIS

¶ 21 Defendant raises the following arguments on appeal: (1) he was denied effective assistance of counsel when his counsel failed to proffer a self-defense jury instruction, (2) the trial court abused its discretion in permitting the State to admit his prior domestic battery convictions as propensity evidence, and (3) he was denied a fair trial when the State disparaged defense counsel's integrity, appealed to the emotions of the jury, and "painted" defendant as a " 'serial domestic batterer.' "

¶ 22 A. Effective Assistance of Counsel

¶ 23 Defendant argues he was denied a fair trial because "[e]ven though there was evidence that [his] conduct may have been justified as an act of self-defense or defense of [their child], defense counsel failed to request a self-defense jury instruction." He argues the jury should have been permitted to deliberate whether his conduct was justified, particularly in light of the video surveillance evidence and Guerrero's testimony that she and defendant had been arguing in the apartment.

¶ 24 All criminal defendants have the constitutional right to the effective assistance of counsel. U.S. Const. amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Defendant's claim of ineffective assistance of counsel is reviewed under the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984) (adopting the *Strickland* standard). To establish a claim of ineffective assistance of counsel, a defendant must show (1) his counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there was a reasonable probability that, but for

counsel's unprofessional performance, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687-88, 694. Failure to establish either prong of the test precludes a finding of ineffective assistance of counsel. *Id.* at 700. When a claim of ineffective assistance is not raised at the trial court level, the matter is reviewed by this court *de novo*. *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 85.

¶ 25        In Illinois, self-defense and defense of others are combined under section 7-1(a) of the Illinois Criminal Code of 2012 (720 ILCS 5/7-1(a) (West 2022)), defining justifiable use of force in defense of a person. To properly raise a claim of defense of a person, there must be evidence on each of the following elements:

> "(1) that unlawful force was threatened against a person; (2) that the person threatened was not the aggressor; (3) that the danger of harm was imminent; (4) that the use of force was necessary; (5) that the person threatened actually and subjectively believed a danger existed that required the use of the force applied; and (6) the beliefs of the person threatened were objectively reasonable." *People v. Lee*, 213 Ill. 2d 218, 224-25 (2004).

"Self-defense is an affirmative defense, and once a defendant raises it, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense." *Id.* at 224. A criminal defendant is entitled to a self-defense or defense of others jury instruction where any credible evidence whatsoever supports such a defense, no matter how slight. *People v. Lewis*, 2015 IL App (1st) 122411, ¶ 56; see *People v. Taylor*, 2016 IL App (1st) 141251, ¶ 11. The question of whether sufficient evidence exists in the record to support the giving of a self-defense jury instruction is a question of law subject to *de novo* review. *People v. Washington*, 2012 IL 110283, ¶ 19.

¶ 26      In this case, we need not determine whether defense counsel's decision to forgo requesting a defense of a person jury instruction was deficient because the evidence shows there is no reasonable probability the result would have been different if he had done so. The evidence presented by the State in this case negates elements necessary to establish defense of a person, and therefore, defendant could not have been prejudiced by his counsel's failure to seek a jury instruction on that theory. See *Lee*, 213 Ill. 2d at 225 (finding if the State negates any element necessary to establish self-defense, the defense fails).

¶ 27      There is nothing in the record to suggest defendant was in danger of imminent harm to justify his conduct. Guerrero testified she and defendant had been arguing in the apartment and she was very concerned when defendant was holding their child while yelling and screaming at her because he was not fully focused on their son. Guerrero decided it would be best to remove herself and her son from the situation by leaving the apartment to spend the night elsewhere. She left the apartment without further incident, only to realize she had forgotten her keys. Moments later, when she attempted to leave the apartment a second time after retrieving her keys, defendant began yelling at her again. Guerrero admitted she "did try to kind of like push him back into the apartment" as he followed her so defendant "wasn't making a scene" in the hallway. She explained she just wanted to walk away. The video shows Guerrero attempting to do so; however, she was stopped by defendant, who followed her, shoved her, and then grabbed the handle of the car seat to prevent her from leaving the building.

¶ 28      Likewise, the record does not support defendant's claim that there was an unlawful threat of force against the child or that he was in imminent danger. Defendant's contention that he told the police he feared for his son's safety while in Guerrero's care is not supported by the record. Officer Henson testified defendant told him he did not want Guerrero to

take their child to her sister's house because defendant claimed the sister's boyfriend was a "child predator." Other than defendant's statement to the police, there is no evidence in the record to establish the sister had a boyfriend. More importantly, no credible evidence was presented establishing that any boyfriend the sister had was a child predator, would have been at the residence where Guerrero planned to seek refuge that evening, or would have had access to the child in any way.

¶ 29 Furthermore, the video shows defendant was, in fact, the aggressor. His actions led to the physical struggle over the car seat with the child inside, and defendant forcibly held Guerrero's head to the floor with his hand on the side or back of her neck. Defendant had been drinking and was yelling and screaming at Guerrero while holding their child. Guerrero testified she believed the best decision was to remove herself and her child from the apartment for the evening. Guerrero attempted to do just that, and in response, defendant was aggressive toward Guerrero and forcibly took the child in the car seat from her to prevent her from safely leaving with the child. Defendant seems to argue his conduct against Guerrero was necessary under the circumstances; however, he did not raise the defense of necessity. See *People v. Shepherd*, 2020 IL App (1st) 172706, ¶ 17 (holding a defendant forfeits an affirmative defense by failing to raise it in the trial court).

¶ 30 We conclude there is no reasonable probability that, but for counsel's decision to not request a defense of a person jury instruction, the result of the proceedings would have been different in this case. Therefore, defendant's ineffective assistance of counsel claim fails.

¶ 31 B. Propensity Evidence

¶ 32 Defendant contends the trial court abused its discretion in permitting the State to admit his prior convictions for domestic battery as evidence of his propensity to commit

domestic violence. In support, he argues the court could not have adequately considered the relevant factors in weighing the probative value of the evidence against the undue prejudice to defendant because "the record is silent as to the type of physical contact in those prior cases, the context in which each occurred, or [defendant's] relationship to those complainants."

¶ 33    "As a common law rule of evidence in Illinois, it is well settled that evidence of other crimes is admissible if relevant for any purpose other than to show a defendant's propensity to commit crimes." *People v. Dabbs*, 239 Ill. 2d 277, 283 (2010). However, section 115-7.4 of the Procedure Code (725 ILCS 5/115-7.4(a) (West 2024)) provides that when a defendant is charged with domestic battery, evidence of his commission of other offenses of domestic violence may be considered by the jury for "its bearing on any matter to which it is relevant." This includes a defendant's propensity to commit the crime charged. *People v. Currie*, 2022 IL App (4th) 210598, ¶ 57. When determining whether to admit such evidence, section 7.4(b) of the Procedure Code provides:

> "In weighing the probative value of the evidence against undue prejudice to the
> defendant, the court may consider:
>
> > (1) the proximity in time to the charged or predicate offense;
> >
> > (2) the degree of factual similarity to the charged or predicate
> offense; or
> >
> >  (3) other relevant facts and circumstances."

725 ILCS 5/115-7.4(b) (West 2024). Furthermore, proof may be made by "specific instances of conduct." *Id.* § 115-7.4(d). This court has held "certified copies of conviction alone are admissible evidence of [a] defendant's propensity to commit acts of domestic violence." *Currie*, 2022 IL App (4th) 210598, ¶ 102.

¶ 34    The admissibility of other-crimes evidence rests within the sound discretion of the trial court, and its decision will not be reversed on appeal absent a clear abuse of that discretion. *Dabbs*, 239 Ill. 2d at 284. "[A]n abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." *People v. McDonald*, 2016 IL 118882, ¶ 32.

¶ 35    In this case, the State established the relevant purpose of the certified copies of defendant's prior convictions was to prove his propensity to commit acts of domestic violence. Although the prior convictions were from a different jurisdiction, the statutory definitions of domestic violence in West Virginia and Illinois at the time of the incidents were essentially the same. See 720 ILCS 5/12-3.2(a) (West 2022); W. Va. Code § 61-2-28(a) (2017). The trial court determined there was sufficient proximity in time and factual similarity underlying the prior convictions to enable it to conduct the balancing test required, and it did so. We disagree with defendant that the court could not conduct this analysis without more details about the victims or physical contact in the prior cases. "[B]y enacting section 115-7.4, the legislature has determined that a defendant's *status* as a person who has been previously convicted of domestic battery is something the jury should hear." (Emphasis in original.) *Currie*, 2022 IL App (4th) 210598, ¶ 81. A certified copy of a defendant's prior conviction is the "best evidence" that he committed a previous act of domestic violence. *Id.* ¶ 99. Under the circumstances, we conclude the trial court did not abuse its discretion in finding the probative value of defendant's prior domestic battery convictions to show his propensity to commit domestic violence was not substantially outweighed by its prejudicial effect.

¶ 36                    C. State's Closing Argument

¶ 37    Finally, defendant contends he was denied a fair trial because the State made

- 14 -

prejudicial comments during its closing arguments that disparaged defense counsel's integrity, appealed to the emotions of the jury, and "painted" defendant as a " 'serial domestic batterer.' " Defendant acknowledges he failed to properly preserve this issue for appeal. However, he contends this court should consider the matter under the plain error doctrine or as ineffective assistance of counsel.

¶ 38       It is well established that to preserve an issue for appellate review, a defendant must make an objection to the purported error during the trial and raise it again in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Furthermore, "[c]atch-all arguments in post-trial motions do not preserve unspecified claims of error on appeal." (Internal quotation marks omitted.) *People v. Pace*, 225 Ill. App. 3d 415, 432 (1992). The failure to preserve an issue for appeal results in its forfeiture. *People v. Sebby*, 2017 IL 119445, ¶ 48. Consequently, we may review this claim of error only if defendant can establish plain error. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967).

¶ 39       The plain error doctrine allows a reviewing court to consider a forfeited error affecting substantial rights in two circumstances:

> "(1) when a clear or obvious error occurred and the evidence is so closely
>
> balanced that the error alone threatened to tip the scales of justice against the
>
> defendant, regardless of the seriousness of the error, or (2) when a clear or
>
> obvious error occurred and the error is so serious that it affected the fairness of
>
> the defendant's trial and challenged the integrity of the judicial process, regardless
>
> of the closeness of the evidence." *People v. Moon*, 2022 IL 125959, ¶ 20.

The first step in any plain error analysis is to determine whether a clear or obvious error occurred. *Sebby*, 2017 IL 119445, ¶ 49.

¶ 40 The State is afforded wide latitude in closing arguments. *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007). "An error in closing argument is not a typical trial error in that it does not involve the admission of inculpatory evidence or the rejection of exculpatory evidence but rather commentary on the evidence that has been presented." *People v. Williams*, 2022 IL 126918, ¶ 40. This is why juries are instructed that "closing arguments are not evidence and 'any statement or argument made by the attorneys which is not based on the evidence should be disregarded.' " *Id.* (quoting Illinois Pattern Jury Instructions, Criminal, No. 1.03 (2011)). Closing arguments must be viewed in their entirety, and the challenged remarks must be viewed in context. *Wheeler*, 226 Ill. 2d at 122. To warrant reversal, the improper remarks must have constituted a "material factor in a defendant's conviction." *Id.* at 123. "In reviewing remarks made during closing arguments, this court asks whether the remarks created a substantial prejudice against the defendant, such that it is impossible to say whether or not a guilty verdict resulted from the remarks." *People v. Miller*, 2020 IL App (1st) 163304, ¶ 46. "If the jury could have reached a contrary verdict had the improper remarks not been made, or the reviewing court cannot say that the prosecutor's improper remarks did not contribute to the defendant's conviction, a new trial should be granted." *Wheeler*, 226 Ill. 2d at 123.

¶ 41 We see no error in the State's reference to defendant as a "serial domestic batterer" in its rebuttal closing argument. The State may comment on the evidence and any reasonable inferences that arise from it, even if those inferences reflect negatively on the defendant. *Williams*, 2022 IL 126918, ¶ 44. This was a reasonable characterization of defendant based on the propensity evidence presented in this case—which defense counsel, during his own closing argument, sought to diminish when he stated defendant's prior convictions had "nothing to do with this case" and questioned whether the State was trying to "inflame" the jury or show

"prejudice" or "pattern."

¶ 42　　　　Similarly, we see no error in the State's rebuttal closing argument, where the prosecutor stated:

> "I have this burden of proof, and you know, suddenly I'm out here and I'm trying to do bad things to good people. Does that look \*\*\* like I'm doing a bad thing here; being up here and asking you to return a verdict of guilty against him for doing that?"

This was a reasonable response to defense counsel's argument characterizing the State as a bad actor because of its "power." "A prosecutor may respond to comments made by defense counsel in closing argument that clearly invite a response." *People v. Johnson*, 208 Ill. 2d 53, 113 (2003). Defense counsel posited to the jury that the State was trying to "inflame" the jury or show "prejudice" and argued the State had "the power of the government to charge anyone" with a criminal offense and seek a conviction. Defense counsel argued the government exercised "plenty of power" by entering defendant's prior convictions into evidence, even though they had nothing to do with this case. The State's response was to refute, however unartfully, that it was "doing a bad thing" by pointing to the evidence and asking the jury to find defendant guilty.

¶ 43　　　　Finally, defendant contends the State's "smoke and mirrors" argument and reference to "deception" disparaged defense counsel's integrity. Numerous courts have condemned the use of similar phrases in closing arguments, and we agree that characterizing opposing counsel's argument in this way is not proper. See *People v. Kidd*, 147 Ill. 2d 510, 542-43 (1992) (citing numerous examples where the use of terms such as "smoke screen" was condemned); *People v. Holmon*, 2019 IL App (5th) 160207, ¶ 50 (noting prosecutors may comment on the credibility or persuasiveness of the defendant's theory of the case, but it is

"highly improper to disparage the integrity of defense counsel"). However, the comments must be considered in the proper context by examining the entire closing argument of the parties. *Johnson*, 208 Ill. 2d at 113.

¶ 44        To put it in context, the State argued: "[A]ll of the smoke and mirrors and the deception and the where was this person and that person and all that other stuff does not matter." The State then posited that the surveillance video was the most important evidence in this case. The State's reference to "this person and that person" was in response to defense counsel's comments about witnesses the State failed to produce at trial. Defense counsel had also argued the State's burden was to present proof beyond a reasonable doubt, but "[t]heir burden [was] beyond that," and the State was obligated to "commit all of its resources and all of its power before it [could] penetrate and cut through the presumption of innocence." Defense counsel also asserted there was no evidence of defendant's "specific intent" or proof that Guerrero was insulted or provoked by the "tussle" that occurred in the vestibule.

¶ 45        We first must address defendant's reliance on the decision in *Kidd* to support his contention that the "smoke and mirrors" comment requires reversal. In *Kidd*, the prosecutor's inappropriate smoke and mirrors theme was repeated in eight different remarks in an arson case where 10 children perished in the fire which the defendant was accused of starting. *Kidd*, 147 Ill. 2d at 544. Our supreme court distinguished the case from others where a prosecutor made only a "passing" or "fleeting" reference to a smoke and mirrors theory, and it was not deemed reversible error. *Id.* (citing *People v. Palmer*, 47 Ill. 2d 289, 301 (1970); *People v. Burnett*, 27 Ill. 2d 510, 518 (1963); *People v. Weatherspoon*, 63 Ill App. 3d 315, 324 (1978)). In this case, the State made one passing reference to smoke and mirrors, which cannot be compared to the repeated and shockingly inappropriate use of the theme in *Kidd*, given the facts in that case. As

- 18 -

such, defendant's reliance on *Kidd* is unpersuasive.

¶ 46    Furthermore, our review of the entire closing argument reveals defense counsel provoked the State's response by commenting that the State's burden was something "beyond" the actual legal standard in this case and that the State's decision to not call certain witnesses was a failure to meet that standard. It bears repeating defense counsel also referred to the "power" of the government to "charge anyone" and seek a conviction. Defense counsel called into question the motives of the State and arguably suggested a higher standard of proof than the legal standard applicable in this case. Although the language used by the State to comment on the credibility or persuasiveness of defense counsel's theory was inappropriate, there was no clear or obvious error. "Statements will not be held improper if they were provoked or invited by the defense counsel's argument." *People v. Glasper*, 234 Ill. 2d 173, 204 (2009). Considered in context, we conclude this remark, although inappropriate, was not so prejudicial that real justice was denied and it was not a material or contributing factor to defendant's conviction. See *Williams*, 2022 IL 126918, ¶ 41.

¶ 47    After our careful review, we conclude no clear or obvious error occurred during the State's closing argument. In the absence of a clear or obvious error, neither the doctrine of plain error nor a theory of ineffective assistance of counsel affords any relief from forfeiture. *People v. Gilker*, 2023 IL App (4th) 220914, ¶ 132 (citing *People v. Jones*, 2020 IL App (4th) 190909, ¶ 179). Thus, defendant's claims in this regard fail.

¶ 48    In sum, none of the contentions raised by defendant constituted error in this case; therefore, defendant's cumulative error argument is also without merit. See *People v. Franklin*, 135 Ill. 2d 78, 105 (1990) (concluding where none of the points relied upon by a defendant constitute error, "logic dictates that there cannot be cumulative error").

¶ 49                              III. CONCLUSION

¶ 50          For the reasons stated, we affirm the trial court's judgment.

¶ 51          Affirmed.